Filed 6/9/16

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THOMAS NICKERSON, | ) | |
| | ) | |
| Plaintiff and Appellant, | ) | |
| | ) | S213873 |
| v. | ) | |
| | ) | Ct.App. 2/3 B234271 |
| STONEBRIDGE LIFE INSURANCE COMPANY, | ) ) ) | |
| | ) | Los Angeles County |
| Defendant and Respondent. | ) | Super. Ct. No. BC405280 |
| _____ | ) | |

The due process clause of the Fourteenth Amendment to the United States Constitution prohibits states from imposing " 'grossly excessive' " punitive damages awards on tortfeasors. (*BMW of North America, Inc. v. Gore* (1996) 517 U.S. 559, 568 (*Gore*).) To determine whether a jury's award of punitive damages is grossly excessive, reviewing courts must consider, among other factors, whether the "measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff" by comparing the amount of compensatory damages to the amount of punitive damages. (*State Farm Mut. Automobile Ins. Co. v. Campbell* (2003) 538 U.S. 408, 426 (*State Farm*).) Absent special justification, ratios of punitive damages to compensatory damages that greatly exceed 9 or 10 to 1 are presumed to be excessive and therefore unconstitutional. (*Simon v. San Paolo U.S. Holding Co., Inc.* (2005) 35 Cal.4th 1159, 1182 (*Simon*).)

The question in this case concerns the proper calculation of the punitive-compensatory ratio when the parties have agreed to have the trial court determine a component of the plaintiff's compensatory damages — here, the attorney fees plaintiff was compelled to expend to obtain the insurance benefits to which he was entitled (see *Brandt v. Superior Court* (1985) 37 Cal.3d 813, 817 (*Brandt*)) — after, rather than before, the jury has rendered its punitive damages verdict. The Court of Appeal in this case held that *Brandt* fees awarded in this manner must be excluded from the calculation in determining whether, and to what extent, the jury's punitive damages award exceeds constitutional limits.

We conclude that the Court of Appeal erred. In determining whether a punitive damages award is unconstitutionally excessive, *Brandt* fees may be included in the calculation of the ratio of punitive to compensatory damages, regardless of whether the fees are awarded by the trier of fact as part of its verdict or are determined by the trial court after the verdict has been rendered. We therefore reverse the judgment of the Court of Appeal.

## I.

On February 11, 2008, plaintiff Thomas Nickerson, who is paralyzed from the chest down, broke his leg when he fell from the wheelchair lift on his van. He was taken to the Department of Veterans Affairs hospital in Long Beach, where, as a veteran, he was entitled to medical care at no cost. After being treated in the emergency room, Nickerson was admitted to the hospital and placed in a unit equipped to treat paraplegics and quadriplegics. Doctors applied a full-leg splint, having determined that Nickerson had suffered a comminuted displaced fracture of his right tibia and fibula, meaning that the bones had broken into several pieces that did not line up with one another. Nickerson thereafter experienced several complications from the injury.

2

After spending several weeks confined to a hospital bed, Nickerson was permitted to move to his wheelchair on March 24, 2008, but could tolerate sitting in the wheelchair for only limited periods of time. On May 19, 2008, Nickerson's treating physician determined that he was stable and would have been ready to return home except that he was unable to maneuver through his home without a particular part needed for his wheelchair. Nickerson was ultimately discharged from the hospital on May 30, 2008, after obtaining the needed part. He had been hospitalized for 109 days total.

Following his discharge from the hospital, Nickerson sought benefits from defendant Stonebridge Life Insurance Company (Stonebridge) under an indemnity benefit policy that promised, as relevant here, to pay him $350 per day for each day he was confined in a hospital for the necessary care and treatment of a covered injury. Some months later, Stonebridge notified Nickerson that it had completed processing his request for benefits. Invoking the policy's definition of "necessary treatment," Stonebridge determined, without consulting the views of Nickerson's treating physicians, that his hospitalization was "medically necessary" only from February 11 to 29. Stonebridge sent Nickerson a check for $6,450, which represented payment of $150 for one visit to the emergency room and $6,300 for 18 days of hospitalization at $350 per day.

Nickerson filed the present suit. He alleged that Stonebridge breached the insurance contract by failing to pay him benefits for the full 109 days of his hospital stay and that Stonebridge breached the implied covenant of good faith and fair dealing by acting unreasonably and in bad faith in denying him his full policy benefits. The parties stipulated before trial that if Nickerson succeeded on his complaint, the trial court could determine the amount of attorney fees to which Nickerson was entitled under *Brandt*, *supra*, 37 Cal.3d 813, as compensation for

3

having to retain counsel to obtain the policy benefits. At trial, neither party presented to the jury evidence concerning the claim for, or amount of, *Brandt* fees.

At the close of Nickerson's case, the trial court granted Nickerson's motion for a directed verdict on the breach of contract cause of action and awarded him $31,500 in unpaid policy benefits. With respect to the bad faith cause of action, the jury returned a special verdict finding that Stonebridge's failure to pay policy benefits was unreasonable and awarded Nickerson $35,000 in damages for emotional distress. The jury also found Stonebridge had "enagage[d] in the conduct with fraud" and awarded $19 million in punitive damages. (See Civ. Code, § 3294, subd. (a) [in a civil case not arising from the breach of a contractual obligation, punitive damages may be awarded "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice"].) After the jury rendered its verdict, the parties stipulated that the amount of attorney fees to which Nickerson was entitled under *Brandt* was $12,500, and the court awarded that amount.

Stonebridge moved for a new trial seeking a reduction in the punitive damages award, which it argued was constitutionally excessive. The trial court agreed and granted Stonebridge a new trial unless Nickerson consented to a reduction of the punitive damages award to $350,000.[1] The trial court cited *State*

---

[1]    Although neither party has raised the point, we note that the "appropriate order" under these circumstances "is for an absolute reduction, rather than a conditional reduction with the alternative of a new trial, i.e., a remittitur." (*Simon*, *supra*, 35 Cal.4th at p. 1187.) As we explained in *Simon*, "[o]nce a maximum constitutional award has been determined, . . . a new trial on punitive damages would be futile. 'Giving a plaintiff the option of a new trial rather than accepting the constitutional maximum for this case would be of no value. If, on a new trial, the plaintiff was awarded punitive damages *less* than the constitutional maximum, he would have lost. If the plaintiff obtained *more* than the constitutional

*(footnote continued on next page)*

4

*Farm, supra*, 538 U.S. 408, for the proposition that a punitive-compensatory ratio exceeding single digits will ordinarily exceed constitutional bounds. (See *id.* at p. 425.) The trial court thus determined it was bound to reduce the punitive damage award to a ratio of punitive to compensatory damages of 10 to 1. In calculating the permissible amount of punitive damages, the court considered only the $35,000 the jury had awarded in compensatory damages for emotional distress for Stonebridge's tortious breach of the implied covenant of good faith and fair dealing; it did not include the $12,500 in *Brandt* fees.

Nickerson rejected the reduction in punitive damages and appealed the order granting a new trial. (See Code Civ. Proc., § 904.1, subd. (a)(4).) A divided Court of Appeal affirmed. The Court of Appeal held that the trial court properly reduced the jury's award to a 10-to-1 ratio of punitive to compensatory damages. The court further held that the trial court had correctly calculated the amount of compensatory damages for purposes of this analysis. In so doing, it rejected Nickerson's argument that the trial court should have taken into account the $12,500 in *Brandt* fees. The court acknowledged the Court of Appeal's holding in *Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1224, that "the amount of the jury's award of *Brandt* fees . . . may be properly considered . . . in determining if the ratio of punitive damages to the tort damages award is excessive." But the court distinguished *Major* on the ground that the jury in that case had awarded *Brandt* fees as part of tort damages. When *Brandt* fees instead

*(footnote continued from previous page)*

maximum, the award could not be sustained. Thus, a new trial provides only a "heads the defendant wins; tails the plaintiff loses" option.' [Citation.]" (*Id.* at p. 1188.)

5

"are awarded by the trial court *after* the jury awards punitive damages," the court held, the fees are not properly included in the constitutional calculus. In support of that proposition, the court cited *Amerigraphics, Inc. v. Mercury Casualty Co.* (2010) 182 Cal.App.4th 1538, 1565, which stated, without further elaboration or citation, that the trial court in that case had "properly excluded the amount of *Brandt* fees in determining the compensatory damages award, since the *Brandt* fees were awarded by the court after the jury had already returned its verdict on the punitive damages."

The dissenting opinion, by contrast, took the view that the award of punitive damages did not satisfy the state law requirements for such an award. (See Civ. Code, § 3294, subd. (a).) Because the dissent would have struck the punitive damages award in its entirety, it did not address whether the court correctly excluded the *Brandt* fees from the calculation of the maximum permissible award.

We granted review, limited to the following question: "Is an award of attorney fees under *Brandt v. Superior Court* (1985) 37 Cal.3d 813, properly included as compensatory damages where the fees are awarded by the jury, but excluded from compensatory damages when they are awarded by the trial court after the jury has rendered its verdict?"

## II.

## A.

In our judicial system, "[a]lthough compensatory damages and punitive damages are typically awarded at the same time by the same decisionmaker, they serve distinct purposes. The former are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct. [Citations.] The latter . . . operate as 'private fines' intended to punish the

6

defendant and to deter future wrongdoing." (*Cooper Industries, Inc. v. Leatherman Tool Group, Inc.* (2001) 532 U.S. 424, 432 (*Cooper Industries*).)

" 'Punitive damages have long been a part of traditional state tort law' " (*Pacific Mutual Life Insurance Co. v. Haslip* (1991) 499 U.S. 1, 15 (*Haslip*)), and the states have "broad discretion" with respect to their imposition (*Cooper Industries*, *supra*, 532 U.S. at p. 433). But because a state's system for awarding punitive damages may "deprive a defendant of 'fair notice . . . of the severity of the penalty that a State may impose' " and "threaten 'arbitrary punishments,' " the United States Supreme Court "has found that the Constitution imposes certain limits, in respect both to procedures for awarding punitive damages and to amounts forbidden as 'grossly excessive.' " (*Philip Morris USA v. Williams* (2007) 549 U.S. 346, 352–353 (*Williams*).)

The court has concluded that the due process clause of the Fourteenth Amendment requires states to, among other things, provide for judicial review of the size of a punitive damages award. Such review, the court has explained, "has been a safeguard against excessive verdicts for as long as punitive damages have been awarded," reflecting the view that a decision to "punish a tortfeasor by means of an exaction of exemplary damages . . . should not be committed to the unreviewable discretion of a jury." (*Honda Motor Co. v. Oberg* (1994) 512 U.S. 415, 421, 434–435 (*Oberg*).)

In a series of cases culminating in *Gore*, *supra*, 517 U.S. 559, the court developed a set of substantive guideposts that reviewing courts must consider in evaluating the size of punitive damages awards: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." (*State Farm*, *supra*, 538

7

U.S. at p. 418, citing *Gore*, at p. 575.) A trial court conducts this inquiry in the first instance; its application of the factors is subject to de novo review on appeal. (*State Farm*, at p. 418.)

Primarily at issue in this case is the second of the *Gore* guideposts, the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award. As the United States Supreme Court has explained, "[t]he principle that exemplary damages must bear a 'reasonable relationship' to compensatory damages has a long pedigree." (*Gore*, *supra*, 517 U.S. at p. 580.) The court cited "a long legislative history, dating back over 700 years and going forward to today, providing for sanctions of double, treble, or quadruple damages to deter and punish." (*State Farm*, *supra*, 538 U.S. at p. 425, citing *Gore*, *supra*, 517 U.S. at p. 581.) Although it has declined to "impose a bright-line ratio which a punitive damages award cannot exceed," the court, guided by this history, has concluded that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." (*Id.* at p. 425.) Following the high court's guidance, we have explained that "ratios between the punitive damages award and the plaintiff's actual or potential compensatory damages significantly greater than 9 or 10 to 1 are suspect and, absent special justification . . . , cannot survive appellate scrutiny under the due process clause." (*Simon*, *supra*, 35 Cal.4th at p. 1182.)

**B.**

The controversy between the parties in this case stems from a trial court's postverdict award of *Brandt* fees to the prevailing plaintiff. In *Brandt*, we held that when an insurance company withholds policy benefits in bad faith, attorney fees reasonably incurred to compel payment of the benefits are recoverable as an element of the plaintiff's damages. (*Brandt*, *supra*, 37 Cal.3d at p. 815.) We

8

explained that when an insurer breaches the implied covenant of good faith and fair dealing by failing to compensate the insured for a loss covered by the policy, " 'the insurer is "liable for any damages which are the proximate result of that breach." [Citation.]' [Citation.]" (*Id.* at p. 817.) "When an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense. The attorney's fees are an economic loss — damages — proximately caused by the tort." (*Ibid.*) We distinguished the recovery of these fees "from recovery of attorney's fees *qua* attorney's fees, such as those attributable to the bringing of the bad faith action itself," explaining that such fees "are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action." (*Ibid.*)

Because "the attorney's fees are recoverable as damages, the determination of the recoverable fees must be made by the trier of fact unless the parties stipulate otherwise." (*Brandt*, *supra*, 37 Cal.3d at p. 819, citing *Dinkins v. American National Ins. Co.* (1979) 92 Cal.App.3d 222, 234.) But we noted that "[a] stipulation for a postjudgment allocation and award by the trial court would normally be preferable since the determination then would be made after completion of the legal services [citation], and proof that otherwise would have been presented to the jury could be simplified because of the court's expertise in evaluating legal services." (*Brandt*, *supra*, 37 Cal.3d at pp. 819–820.) Consistent with that suggestion, the trial court in this case accepted the parties' pretrial stipulation that if Nickerson were to succeed on his bad faith claim against Stonebridge, the court would determine the amount of attorney fees to which Nickerson was entitled under *Brandt*. After trial, the parties stipulated that the amount of attorney fees to which Nickerson was entitled was $12,500, and the court awarded that amount. The question is whether this amount may be included

9

in the calculation of the ratio of punitive damages to compensatory damages for the purpose of determining whether, and by what amount, the jury's $19 million punitive damages award exceeds constitutional limits.

### III.

Nickerson argues, and Stonebridge does not dispute, that *Brandt* fees ordinarily qualify as compensatory damages for purposes of applying the second *Gore* guidepost. We agree. That conclusion follows from *Brandt* itself, which held that such fees are recoverable precisely because they "are an economic loss — damages — proximately caused by the tort . . . in the same way that medical fees would be part of the damages in a personal injury action." (*Brandt*, *supra*, 37 Cal.3d at p. 817; see *Major v. Western Home Ins. Co.*, *supra*, 169 Cal.App.4th at p. 1224 ["[T]he amount of the jury's award of *Brandt* fees . . . may be properly considered . . . in determining if the ratio of punitive damages to the tort damages award is excessive."].)

Stonebridge counters, however, that when a trial court determines *Brandt* fees after the jury has already rendered its punitive damages verdict, the fees may not be considered in calculating the punitive-compensatory ratio. Stonebridge reasons that the purpose of the three-factor analysis set out in *Gore* is to permit courts to identify punitive damages awards that are tainted by irrational or arbitrary jury decisionmaking, and "[o]nly evidence that was presented to the jury properly has a role in that inquiry." Thus, Stonebridge submits, "review of an award of punitive damages must be based only on the evidence that was presented to the jury" and must exclude the *Brandt* fees determined after the jury rendered its verdict in this case.

To the extent Stonebridge is concerned about the jury's ability to render a rational punitive damages verdict without having heard evidence of the *Brandt*

10

fees, the rule Stonebridge urges us to adopt seems a rather roundabout way of getting at the problem. But although Stonebridge does raise a more direct argument that the jury's verdict was invalid from the moment it was rendered because the jury was unaware of a substantial component of the harm that plaintiff had suffered, Stonebridge gives this argument little more than a passing nod. That is presumably because Stonebridge itself invited this state of affairs when it stipulated to a postverdict determination of *Brandt* fees and raised no objection to the jury returning a punitive damages verdict in the absence of evidence about the fees. Having thus consented to, or at least acquiesced in, this procedure, Stonebridge has forfeited any argument that the procedure itself was legally impermissible. Stonebridge is now left in the position of arguing that the procedure nevertheless caused the jury to act irrationally, and that it is the duty of the reviewing courts to suss out that irrationality in applying the second *Gore* guidepost.

Whatever the merits of the underlying premise of the argument, the argument fails because it misconceives the nature of the *Gore* inquiry. As noted, the due process clause imposes both procedural and substantive limitations to curb arbitrary punitive damages awards. (*Williams*, *supra*, 549 U.S. at pp. 352–353.) Relevant procedural limitations include certain constraints on the jury's decisionmaking process. For example, the jury must be adequately informed of the nature and purposes of punitive damages in order to "reasonably accommodate[]" the defendant's "interest in rational decisionmaking." (*Haslip*, *supra*, 499 U.S. at p. 20.) Stonebridge relies heavily on these and other similar references to rational jury decisionmaking in arguing that application of the second *Gore* guidepost must be limited to facts that were before the jury when it rendered its verdict. (See, e.g., *Adams v. Murakami* (1991) 54 Cal.3d 105, 109, 114 [holding, as a matter of state law, that evidence of a defendant's financial

11

condition is a prerequisite to an award of punitive damages, and that such evidence must appear in the record on appellate review, because, among other things, "absent financial evidence, a jury will be encouraged (indeed, required) to speculate as to a defendant's net worth in seeking to return a verdict that will appropriately punish the defendant"].)

But *Gore* is a fundamentally different type of safeguard. Although the *Gore* inquiry, too, serves to prevent arbitrary punitive damages awards, it does not perform this function by regulating the jury's decisionmaking process. The *Gore* guideposts are framed neither as rules of trial procedure nor as model jury instructions. Rather, recognizing that postverdict judicial review is an essential step in a state's ultimate determination of the amount of a punitive damages award (see *Oberg*, *supra*, 512 U.S. at pp. 434–435), *Gore* prescribes a set of rules for reviewing courts to apply in order to ensure that the state ultimately does not impose an award whose size exceeds constitutional limits (*Gore*, *supra*, 517 U.S. at pp. 574-575).

Although the *Gore* guideposts overlap to some extent with questions juries are generally asked to consider in fixing punitive damages awards, the question for courts applying the guideposts is not whether the jury's "verdict is unreasonable based on the facts." (*Gober v. Ralphs Grocery Co.* (2006) 137 Cal.App.4th 204, 214.) Rather, as in other contexts in which courts review civil and criminal sanctions for constitutional excessiveness, courts applying the *Gore* guideposts make an independent determination whether the amount of the award exceeds the state's power to punish. (*Ibid.*; see *Cooper Industries*, *supra*, 532 U.S. at pp. 433–440, citing cases.) Should a reviewing court conclude that the jury's punitive damages award is excessive, the remedy is not to set the award aside — as the court would if it determined that the jury's decisionmaking process was tainted by bias or prejudice (see, e.g., *Weathers v. Kaiser Foundation Hospitals* (1971) 5

12

Cal.3d 98, 110) or by confusion about the question to be answered (see, e.g., *Pease v. Beech Aircraft Corp.* (1974) 38 Cal.App.3d 450, 465) — but to reduce the award to constitutional limits (*Simon*, *supra*, 35 Cal.4th at p. 1187).

Because the *Gore* guideposts are designed to govern postverdict judicial review of the amount of a jury's award, not the adequacy of the jury's deliberative process, there is no apparent reason why a court applying the second guidepost may not consider a postverdict compensatory damages award in its constitutional calculus. Indeed, in *Gore* itself, the United States Supreme Court's application of the guideposts touched on matters of which the jury could not have been aware when it rendered its punitive damages verdict. (See *Gore*, *supra*, 517 U.S. at p. 579, fn. 31 [noting the defendant's postverdict conduct in evaluating the reprehensibility of the defendant's actions under the first guidepost].) And as Stonebridge itself conceded in its brief, the third guidepost, concerning available sanctions for comparable misconduct, is by its nature a question aimed at reviewing courts, rather than juries. (See *Cooper Industries*, *supra*, 532 U.S. at p. 440 [the third guidepost "calls for a broad legal comparison" suited to the expertise of appellate courts]; cf. *Gore*, *supra*, 517 U.S. at pp. 583–584 [reviewing the civil penalties available under the consumer protection laws of several states before concluding that the punitive damages award at issue was "substantially greater than the statutory fines available in Alabama and elsewhere for similar malfeasance"].) That concession critically undermines the notion that *Gore*'s purpose is to suss out jury irrationality by limiting judicial review to matters presented to, and considered by, the jury.

It is true, as Stonebridge notes, that the comparison between compensatory and punitive damages requires evidence of those damages, whereas the legal comparison required under the third guidepost is not "an evidentiary matter." It is also true, as Stonebridge notes, that appellate courts applying the *Gore* guideposts

13

must defer to evidentiary findings made by the trier of fact. (See *Cooper Industries*, *supra*, 532 U.S. at p. 440, fn. 14.) Indeed, appellate courts performing *any* appellate function must defer to evidentiary findings made by the trier of fact; such is the nature of appellate review. (See, e.g., *People v. Cromer* (2001) 24 Cal.4th 889, 893–894.) But it does not follow, as Stonebridge appears to reason, that *Gore* limits an appellate court to considering facts considered by juries in applying the second guidepost. Indeed, as Stonebridge acknowledges, our decision in *Simon*, *supra*, 35 Cal.4th at page 1173, recognized that a reviewing court applying the second *Gore* guidepost may consider not only the compensatory damages actually awarded by the jury, but also the "potential harm" suffered by the plaintiff, even though the jury was never asked to consider potential harm in rendering its verdict. It may be true, as Stonebridge says, that a reviewing court's consideration of potential harm will ordinarily be based on evidence presented to the jury at trial. But it is not clear why judicial review should be more constrained where, as here, the parties have agreed to submit an element of the plaintiff's harm to the trial court for resolution. An appellate court that takes the resulting trial court determination into account does not transgress the normal appellate role; rather, it properly defers to findings made by the trier of fact designated by the parties to resolve the issue.

We acknowledge Stonebridge's concerns about the effect of the jury's ignorance of the *Brandt* fees on the course of the punitive damages proceedings. Of course, had the jury heard evidence that Nickerson suffered even more harm

14

than it had previously thought, the jury might well have decided to punish Stonebridge even more harshly. On the other hand, as Stonebridge says, presentation of evidence concerning the *Brandt* fees could have enabled counsel to argue that the *Brandt* fees, too, would have a deterrent effect on future misconduct, and to make a pitch to reduce the punitive damages award accordingly. In the end, this is the bargain Stonebridge made when it stipulated to posttrial determination of the *Brandt* fees, then raised no objection to submitting the punitive damages issue to the jury in the absence of evidence relating to the fees. Stonebridge cannot now attempt to leverage that bargain into a truncated application of the *Gore* guideposts.

In sum, we find no reason to exclude the amount of *Brandt* fees from the constitutional calculus merely because they were determined, pursuant to the parties' stipulation, by the trial court after the jury rendered its punitive damages verdict. On the contrary, to exclude the fees from consideration would mean overlooking a substantial and mutually acknowledged component of the insured's harm. The effect would be to skew the proper calculation of the punitive-compensatory ratio, and thus to impair reviewing courts' full consideration of whether, and to what extent, the punitive damages award exceeds constitutional bounds.[2]

---

[2]     The decision in *Amerigraphics, Inc. v. Mercury Casualty Co.* (2010) 182 Cal.App.4th 1538, is disapproved to the extent it is inconsistent with this holding.

15

## IV.

The judgment of the Court of Appeal is reversed and the matter is remanded to the Court of Appeal for further proceedings consistent with this decision.

**KRUGER, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Nickerson v. Stonebridge Life Insurance Company

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 219 Cal.App.4th 188
**Rehearing Granted**

_____

**Opinion No.** S213873
**Date Filed:** June 9, 2016

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Mary Ann Murphy

_____

**Counsel:**

Shernoff Bidart Echeverria Bentley, William M. Shernoff, Howard S. Shernoff, Travis M. Corby; The Ehrlich Law Firm and Jeffrey Isaac Ehrlich for Plaintiff and Appellant.

The Arkin Law Firm, Sharon J. Arkin; Amy Bach; Knapp & Roberts and David L. Abney for United Policyholders as Amicus Curiae on behalf of Plaintiff and Appellant.

Baute Crochetiere & Wang, Lee Tran Liang & Wang, David P. Crochetiere, Henry C. Wang; Reed Smith, Margaret M. Grignon and Zareh A. Jaltorossian for Defendant and Respondent.

Shook, Hardy & Bacon, Mark A. Behrens, Christopher E. Appel and Kevin Underhill for American Tort Reform Association, National Association of Mutual Insurance Companies and Property Casualty Insurers Association of America as Amici Curiae on behalf of Defendant and Respondent.

Mayer Brown and Donald M. Falk for The Chamber of Commerce of the United States of America as Amicus Curiae on behalf of Defendant and Respondent.

Fred J. Hiestand for The Civil Justice Association of California as Amicus Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Jeffrey Isaac Ehrlich
The Ehrlich Law Firm
16130 Ventura Boulevard, Suite 610
Encino, CA  91436
(818) 905-3970

Margaret M. Grignon
Reed Smith
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
(213) 457-8000