Filed 9/8/17

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CALIFORNIA CORRECTIONAL PEACE OFFICERS ASSOCIATION,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>DEPARTMENT OF CORRECTIONS AND REHABILITATION et al.,<br><br>Defendants and Respondents. | C078723<br><br>(Super. Ct. No. 34-2013-80001524-CU-WM-GDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, Allen H. Sumner, Judge. Reversed with directions.

California Correctional Peace Officers Association, Daniel M. Lindsay and Charlotte Martinez; Benedon & Serlin, Douglas G. Benedon and Wendy S. Albers for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Chris A. Knudsen, Senior Assistant Attorney General, Julie L. Harlan, Deputy Attorney General, for Defendants and Respondents.

The California Correctional Peace Officers Association (the Association) brought a grievance on behalf of correctional officer Sammie Gardner, alleging a violation of his rights under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) (38 U.S.C. §§ 4301 et seq.). The grievance proceeded through the four-step process set forth in the memorandum of understanding (MOU) between the Association and the California Department of Corrections and Rehabilitation (Corrections). At the fourth step, a hearing before the Department of Personnel Administration (Department), the Department granted the grievance. When Corrections refused to comply with the Department's decision, the Association petitioned for a writ of mandate (Code Civ. Proc., § 1085) to compel compliance, the enforcement provided for in the MOU. The trial court denied the petition, adopting Correction's position, first raised in the trial court, that the Department lacked jurisdiction to decide the grievance because the State Personnel Board (SPB) had exclusive jurisdiction over appointments and the employment status of civil service employees and the foundation of the Department's decision was the finding that Gardner was an employee of Corrections in November 2001.

The Association appeals, contending the grievance at issue is not under the exclusive jurisdiction of the SPB because it is not a merit-based grievance. We agree. We conclude the grievance at issue did not implicate the merit principle, set forth in the California Constitution, and therefore the SPB did not have exclusive jurisdiction. The MOU expressly provided that a grievance based on a reemployment USERRA claim, the claim actually decided, be appealed to the Department. Further, by acquiescing in the grievance procedure used, Corrections forfeited any claim that it was the wrong procedure. We reverse the judgment.

**FACTS**

In August 2011, the Association filed a grievance on behalf of Sammie Gardner. The grievance stated that Gardner had applied for a position with Corrections in 2000 while he was on active duty with the United States Air Force. Gardner received two job

2

offers from Corrections, one in July 2001 and one in November 2001. Gardner began separation from service in about August 2001.

After and because of the terrorist attacks of September 11, 2001, Gardner was reinstated to active duty and was unable to report to Corrections for the November 2001 academy. Gardner reported his unavailability to a Corrections sergeant and was told to report at the end of his tour of duty and that he would be assigned to the next academy. Gardner was released from duty in December 2002 and reported to Corrections. He was told there was a hiring freeze in effect and that he would need to reapply. Corrections hired Gardner in 2005. There had been a Corrections academy in November 2003, which Gardener had not been able to attend because according to Corrections he was not an employee.

The grievance alleged that Corrections had violated USERRA by withholding employment from Gardner due to his military service.[1] As the "Rule," it cited USERRA, Government Code section 19775.18, and two provisions of the MOU relating to USERRA. The grievance set forth two "scenarios" that applied to Gardner. First, if Corrections withdrew the employment offer due to Gardner's military status, it violated USERRA by discriminating against him due to his military status (the discrimination claim). Second, if Corrections did not withdraw the offer, then Gardner accepted it and Corrections had a duty to re-employ him upon return from military duty (the

---

[1] Corrections complains that "Gardner sat on his claims for ten years." As the trial court noted, the issue of the timeliness of the grievance was not raised. The MOU requires raising the grievance with the employee's supervisor within 21 days of the violation or reasonable knowledge thereof. While USERRA has no statute of limitations, a USERRA claim is subject to the defense of laches. (*Rogers v. City of San Antonio* (5th Cir. 2004) 392 F.3d 758, 773; *Miller v. City of Indianapolis* (7th Cir. 2002) 281 F.3d 648, 653-654.)

3

reemployment claim).[2]  Under either scenario, the grievance asserted that "Gardner is eligible for employment effective November 2001."

As remedies for the USERRA violation, the grievance sought remuneration for all merit salary increases Gardner would have received had he not been deployed; recalculation of his time worked, including overtime; credit for all leave credit as if he had not been deployed; recalculation of his seniority status; recalculation of his retirement to reflect a November 2001 start date; and any remedies "deemed just, proper and mutually agreed upon."

Article six of the MOU provided a procedure for certain grievances.  Merit system appeals, under the jurisdiction of the SPB, were not grievable under the MOU.  Merit system appeals included merit complaints and equal employment opportunity (EEO) complaints.  The grievance procedure was first an informal discussion with the employee's supervisor, two steps of formal appeal to Corrections, and for certain grievances, including those under section 10.17 (leave for military service), an appeal to the Department.  If the Department responded to the grievance by providing a remedy for the alleged violation, the Association could enforce the remedy by filing a writ of mandate pursuant to Code of Civil Procedure section 1085.  If the Association was not satisfied with the decision, "only the [Association] may appeal the decision to binding arbitration."

Section 10.17 of the MOU addressed absences for duty in the uniformed services. It made reference to USERRA and stated that for California employees, USERRA was supplemented by Government Code sections 19770 through 19786.  Section 10.17 set forth a summary of the relevant duties and obligations of both employers and employees

---

[2]  Corrections took the position that Gardner rejected the employment offer when he advised that he could not attend the academy due to his military service.  Corrections argued that due to this rejection there was no discrimination or duty to rehire.

4

under the law. It summarized the law as to the required advance notice of military leave, the required military leave, sick leave during military service, and the time limits for reporting back to work after military service.

The parties utilized the article six grievance procedure without objection. Corrections denied both of Gardner's formal appeals (steps two and three). The grievance then went to the Department.[3] In March 2012, the Department granted the grievance and found Gardner eligible for seniority, retirement, and salary advancement credit as if he had reported to work for the November 2001 academy. The Department found "an employment relationship existed between Officer Gardner and [Corrections] when a bona fide job offer was made in 2001. This relationship afforded him certain protections under USERRA."

In late October or early November 2012, Corrections sent Gardner a check in the amount of $15,000, as a "good faith payment." Gardner was told he might have to give the money back because a Corrections attorney had decided Corrections was not going to abide by the Department's decision. In a series of communications in March through May of 2013 between attorneys for the Association and Corrections, Corrections indicated it did not intend to comply with the Department's decision.

The Association petitioned for a writ of mandate in superior court to compel Corrections to comply with the Department's decision. In response, for the first time, Corrections alleged that the Department lacked jurisdiction for the order because the SPB

---

[3] Effective July 1, 2012, the Department was abolished by a reorganization plan that created the Department of Human Resources (DHR). The duties and functions of the Department were transferred to the DHR. The DHR is vested with the duties, purposes, responsibilities, and jurisdiction exercised by the SPB as its designee with respect to the SPB administrative and ministerial functions. The reorganization plan eliminated certain functions of the SPB relating to investigating and hearing complaints of discrimination in the civil service. (Gov. Reorg. Plan No. 1 of 2011, § 88, oper. July 1, 2012, Stats. 2012, ch. 360, § 69.)

5

has exclusive jurisdiction over appointments and employment status. Further, Corrections contended the Department's decision was too vague to implement.

After allowing supplemental briefing, the trial court denied the petition. It found the Department exceeded its jurisdiction in determining that Gardner was an employee of Corrections in November 2001.

The Association appealed.[4]

**DISCUSSION**

I

*Employment Rights of Members of the Uniformed Services*

A. *USERRA*

USERRA was enacted "to encourage noncareer service in the uniformed services"; to minimize disruption caused by service in the uniformed services "by providing for prompt reemployment" "upon [] completion of such service"; and "to prohibit discrimination against persons because of their service in the uniformed service." (38 U.S.C. § 4301, subd. (a).) "USERRA was enacted to protect the rights of veterans and members of the uniformed services. [Citation.] Much of USERRA is devoted to establishing 'reemployment' rights for persons who are absent from their jobs due to service in the uniformed services. [Citations.] Additionally, USERRA prohibits employers and prospective employers from discriminating and retaliating against service members based on either their military service or their assertion of entitlement to rights under USERRA. [Citation.] Because of USERRA's compelling purpose, 'it must be broadly construed in favor of its military beneficiaries.' [Citations.]" (*Quick v. Frontier Airlines, Inc.* (D.Colo. 2008) 544 F.Supp.2d 1197, 1206-1207.)

_____

[4] Because we are asked to decide only the question of whether the Department had *the authority* to issue its decision, we express no opinion on whether the decision itself is correct.

6

USERRA provides both an anti-discrimination provision and a reemployment rights provision. Under the anti-discrimination provision, "A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation." (38 U.S.C. § 4311, subd. (a).) Under this provision "an employer may not discriminate in hiring based on a prospective employee's unavailability due to his obligation to perform military service." (*McLain v. City of Somerville* (D.Mass. 2006) 424 F.Supp.2d 329, 335-336 [violation of USERRA not to hire as police officer applicant who could not be available for police academy due to service in the Army].)

Under the reemployment provision of USERRA, "[A]ny person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter [] if—(1) the person . . . has given advance written or verbal notice of such service to such person's employer; (2) the cumulative length of the absence . . . by reason of service in the uniformed services does not exceed five years; and (3) . . . the person reports to, or submits an application for reemployment to, such employer . . . ." (38 U.S.C. § 4312, subd. (a).)

USERRA provides for jurisdiction in state court for an action to enforce rights under USERRA against a state as employer. (38 U.S.C. § 4323, subd. (b)(2); *Townsend v. Univ. of Alaska* (9th Cir. 2008) 543 F.3d 478, 482-483.) That jurisdiction, however, is not exclusive. USERRA claims may be resolved in nonjudicial settings. (*Garrett v. Circuit City Stores, Inc.* (5th Cir. 2006) 449 F.3d 672, 678 [USERRA claims subject to arbitration].)

7

B.  *California Law on Military Leaves*

California law also provides for periods of military leave for employees.  (Gov. Code, §§ 19770 et seq.)  Prior to the reorganization plan that eliminated the Department, Government Code section 19770 provided:  "Both the [SPB] and the [Department] have responsibilities for carrying out certain provisions of this chapter as provided in subdivision (b).  [¶]  (b) The [SPB] is responsible for the provisions of this chapter pertaining to civil service examinations, list eligibility, appointments, reinstatements, probationary periods, and status.  The [Department] is responsible for the provisions of this chapter on eligibility for military leave and the effect of these leaves on the employee's salary, vacation, sick leave, and seniority."  (Stats. 2002, ch. 60, § 2.)

As to prospective employees, the law provides "a person in recognized military service whose name was high enough on an employment list to be available for certification for possible permanent appointment to a position while he or she was in the armed forces of the United States shall retain his or her place on the list for three years following the date of his or her release from military service . . . ."[5]  (Gov. Code, § 19775.4.)  The Civil Service Act (Gov. Code, §§ 18500 et seq.) prohibits any discrimination on the basis of medical condition, mental disability, or physical disability (Gov. Code § 19702, subd. (a)).[6]  Beginning in 2014, the Fair Employment and Housing

---

[5] In rejecting the grievance at steps two and three, Corrections took the position that Gardner's eligibility expired July 1, 2002.  Although Government Code section 19775.4 appears relevant to Gardner's situation, as the trial court noted, the parties did not address it.

[6] A previous version of this statute prohibited discrimination on any basis set forth in Government Code section 12940.  (Gov. Code, § 19702, as amended by Stats. 2004, ch. 788, § 10, pp. 6027-6030.)  It was amended in 2012 as part of the Governor's Reorganization Plan No. 1 of 2011 to limit the SPB's authority to consider discrimination claims to only those based on medical condition, mental disability, or physical disability. (Stats. 2012, ch. 360, § 69.)

Act (FEHA) makes it an unlawful employment practice to refuse to hire or employ a person based on military and veteran status. (Gov. Code § 12940, subd. (a) as amended by Stats. 2013, ch. 691, § 1.)

The only provision of California law specifically cited in the grievance is Government Code section 19775.18 which applies only to members "of the California National Guard or a United States military reserve organization . . . ordered to active duty on or after September 11, 2001, as a result of the War on Terrorism." (Gov. Code, § 19775.18, subd. (a).) Since Gardner was in the Air Force, this provision is inapplicable. The grievance, therefore, was based on violation of USERRA, not the violation of state law.

## II

### *The Parties' Contentions*

The Association contends the trial court erred in viewing the grievance as a merit-based claim within the exclusive jurisdiction of the SPB. It asserts neither aspect of the grievance was merit-based. It argues the claim of discrimination based on military status does not implicate the merit principle because it has nothing to do with Gardner's fitness or qualifications as a correctional officer. The reemployment claim for salary and benefits, the argument continues, is an issue within the authority of the Department, as set forth in former Government Code section 19770, subdivision (b). The Association stresses that section 6.10, subd. (A) of the MOU provides that USERRA grievances (section 10.17 of the MOU) are appealed to the Department at the fourth step of the grievance procedure. At the very least, the Association contends, the SPB and the Department had concurrent jurisdiction over the grievance.

Corrections contends the Department lacked jurisdiction to decide the grievance so its decision is void and unenforceable. It argues the reemployment claim required a finding that Gardner was employed prior to his military leave and the SPB has exclusive jurisdiction over appointments, including the date of appointment. It also contends the

9

discrimination claim was not grievable under the MOU. First, the MOU does not mention discrimination claims in its summary of USERRA, so section 10.17 does not cover USERRA discrimination claims. Second, the MOU expressly exempts merit appeals from the grievance procedure and merit appeals include all EEO complaints as set forth in the department operating manual (DOM) which covers discrimination based on military or veteran status. Further, Corrections argues grievances under the MOU cannot include pre-employment claims as such claims would require an expenditure of funds not approved by the Legislature.

III

*The SPB and the Merit Principle*

The core dispute in this case is whether the grievance, alleging a violation of USERRA, is merit based and therefore within the exclusive jurisdiction of the SPB. To resolve this issue, we begin with a brief discussion of the merit principle and the SPB's role in implementing it.

The SPB was established to administer the merit principle of civil service employment. (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 184 (*Pacific Legal*).) The merit principle is enshrined in the California Constitution: "In the civil service permanent appointment and promotion shall be made under a general system based on merit ascertained by competitive examination." (Cal. Const., art. VII, § 1.) The "sole aim" of the merit principle is to eliminate "political favoritism in the state civil service" and "to dismantle the spoils system in this state." (*California Attorneys, etc. v. Schwarzenegger* (2009) 174 Cal.App.4th 424, 433, 434.)

The SPB is a constitutional agency charged with overseeing civil service laws. It "shall enforce the civil service statutes and, by majority vote of all its members, shall prescribe probationary periods and classifications, adopt other rules authorized by statute, and review disciplinary actions." (Cal. Const., art. VII, § 3.) By contrast, the (former) "[Department] has jurisdiction over the state's financial relationship with its employees,

10

including matters of salary, layoffs and nondisciplinary demotions." (*Gilb v. Chiang* (2010) 186 Cal.App.4th 444, 465.)

Because the merit principle is "inviolate" (*Pacific Legal, supra,* 29 Cal.3d at p. 194), neither a statute nor an MOU may contravene it. In *California State Personnel Bd. v. California State Employees Assn., Local 1000, SEIU, AFL-CIO* (2005) 36 Cal.4th 758, the Legislature approved three collective bargaining agreements that provided for "post and bid" pilot programs in those bargaining units. These programs required that permanent appointment and promotion of employees eligible for post and bid positions be based on seniority in state service. Our Supreme Court held the post and bid programs violated the fundamental mandate of the merit principle. (*Id.* at pp. 775-776.) "[W]e conclude the Legislature may not approve collective bargaining agreements requiring that state employers make their permanent appointments and promotions based solely on the seniority status of employees meeting all eligibility and ranking requirements, without allowance for comparative merit evaluations of those employees." (*Id.* at p. 772.)

In *State Personnel Bd. v. Department of Personnel Admin.* (2005) 37 Cal.4th 512, the SPB successfully challenged four MOUs that allowed covered employees to challenge disciplinary actions either by seeking review before the SPB or by pursuing an alternative grievance/arbitration procedure that bypassed the SPB. Our high court found SPB's constitutional authority to review disciplinary actions was a " 'necessary counterpart' " to the SPB's power to administer the merit principle. (*Id.* at p. 526.) "It would be inimical to California's constitutionally mandated merit-based system of civil service, which is administered by the [SPB], to wholly divest that board of authority to review employee disciplinary actions in favor of an MOU-created review board. This is so because a state civil service based on the merit principle can be achieved only by developing and consistently applying uniform standards for employee hiring, promotion, and discipline. By vesting in the nonpartisan [SPB] the *sole* authority to administer the state civil service system (Cal. Const., art. VII, § 3), our state Constitution recognizes that

11

this task must be entrusted to *single* agency, the constitutionally created [SPB].  Because employee discipline is an integral part of the civil service system, the [SPB]'s *exclusive* authority to review disciplinary decisions is a critical component of the civil service system."  (*Id.* at pp. 526-527.)

Not every grant of certain functions relating to the employment of civil service employees to an administrative agency other than the SPB violates the merit principle.  In *Pacific Legal, supra,* 29 Cal.3d 168, the court rejected a facial challenge to the State Employer-Employee Relations Act (SEERA) that provided for collective bargaining for state civil service employees.  The court further rejected the claim "that the provisions of SEERA granting PERB [the Public Employment Relations Board] jurisdiction to investigate and devise remedies for unfair practices are irreconcilably in conflict with the [SPB]'s jurisdiction to 'review disciplinary actions' under article VII, section 3, subdivision (a)."  (*Id.* at p. 196.)  PERB's "more specialized and focused task" to protect against unfair labor practices did not conflict with the SPB's jurisdiction over disciplinary actions to protect the merit principle.  (*Id.* at p. 198.)  The court explained that PERB and the SPB served different, but not inconsistent purposes, and as far as possible the respective tasks of PERB and the SPB should be accommodated.  (*Id*. at pp. 197-198.)

In *State Personnel Bd. v. Fair Employment & Housing Com*. (1985) 39 Cal.3d 422, three applicants who had been rejected as traffic officer cadets with the California Highway Patrol filed complaints with the Fair Employment and Housing Commission (FEHC) asserting discrimination on the basis of physical handicap.  The SPB sought an injunction to prevent the FEHC or the Department of Fair Employment and Housing from exercising jurisdiction over the applicants' claims.  The trial court granted a permanent injunction, basing "its decision on article VII of our Constitution, which it interpreted as granting to the Board 'exclusive jurisdiction' over all matters involving state civil service employees."  (*Id.* at p. 427.)  Our Supreme Court disagreed, finding the merit principle "is unharmed by the watchdog functions of the fair employment agencies.

12

Indeed, the principle of nondiscrimination reinforces the merit principle. The FEHA guarantees that non-merit factors such as race, sex, physical handicap, and the like, play no part in the appointment of civil service employees." (*Id.* at p. 439.)

In *California Correctional Peace Officers Association v. State Personnel Bd*. (1995) 10 Cal.4th 1133, our Supreme Court considered Government Code section 18671.1, which requires the SPB to render a decision on a disciplinary matter within alternative statutory deadlines and provides that if the SPB does not meet these statutory deadlines, the employee may seek de novo review in the superior court. Our high court held that by providing for de novo review in the superior court, the Legislature did not violate the SPB's constitutional authority to review disciplinary actions. The court reasoned that since the constitutional "provision exists solely to ensure that the right to appeal to the [SPB] exists, a statute which permits the employee to waive that right when the [SPB] has failed to comply with the statutory time limit for decision and to seek judicial review of an adverse action is not inconsistent with the present article VII, section 3 of the Constitution." (*Id.* at p. 1153.)

Here, a grievance claiming violation of USERRA was appealed to the Department, as provided in the fourth step of the grievance procedure in the MOU.**7** This grievance procedure did not violate the merit principle. To the extent the grievance was based on discrimination in initial hiring, it is analogous to the situation in *State Personnel Bd. v. Fair Employment & Housing Com.*, *supra*, 39 Cal.3d 422, where our Supreme Court found the watchdog functions of fair employment agencies did not conflict with the merit principle. "Indeed, the principle of nondiscrimination reinforces the merit principle." (*Id.* at p. 439.) Like the FEHA, the nondiscrimination provisions of USERRA guarantee

---

**7** Corrections contends this grievance did not fall under section 10.17 of the MOU relating to USERRA and therefore was not grievable under the MOU, an issue we discuss in part IV, *post*.

13

that non-merit factors such as military or veteran status "play no part in the appointment of civil service employees." (*Ibid.*) To the extent the grievance was based on a violation of Gardner's reemployment rights, the issue concerned his pay and benefits, an issue over which the Department had responsibility under former Government Code section 19770, subdivision (b). (Stats. 2002, ch. 60, § 2.) The grievance did not concern Gardner's initial employment, his qualifications for the job, or his eligibility based on competitive merit evaluation. Thus, it did not implicate the merit principle. Rather, the grievance concerned his federal reemployment rights following military service.

Corrections contends this grievance *did* implicate the merit principle because the Department determined Gardner's employment status and the date of his appointment as part of addressing and resolving the grievance. Corrections contends all issues relating to appointment are within the exclusive jurisdiction of the SPB. We are not persuaded. Corrections' argument improperly focuses on the *outcome of the decision* rather than the *nature of the grievance*. The gravamen of the grievance did not implicate the merit principle because it did not concern whether Gardner's "civil service permanent appointment . . . [was] made under a general system based on merit ascertained by competitive examination." (Cal. Const., art. VII, § 1.) It was undisputed that Gardner had completed all required examinations and was on the eligibility list and that Corrections offered him employment in 2001. He was unable to timely report to the academy due to an unplanned extension in his military service. The gravamen of the grievance was that Gardener was unlawfully discriminated against and denied pay and benefits to which he was entitled, either because he was not hired initially due to the extension in his military service or because he was not rehired directly after completion of his military service.

Thus the grievance did not involve the administration of the state civil service laws, the area where the SPB has exclusive jurisdiction. Instead, it involved the application of *federal* law, USERRA. Federal law grants jurisdiction over USERRA

14

claims to state courts where the employer is a state (38 U.S.C. § 4323, subd. (b)(2)), but permits resolution of USERRA claims in nonjudicial settings (*Garrett v. Circuit City Stores, Inc.*, *supra*, 449 F.3d at p. 678). Under federal law, the SPB does not and cannot have exclusive jurisdiction over a USERRA claim and the parties are free to select an alternative forum for resolution of their dispute. Here the parties agreed in the MOU that USERRA claims (at least reemployment claims) would be heard by the Department.

IV

*Whether the Grievance was Covered by Provisions of the MOU*

Having determined that the California Constitution does not mandate that a claim of violation of USERRA is within the exclusive jurisdiction of the SPB, we turn to the question of whether the complaint was grievable under the terms of the MOU. Corrections contends the MOU did not confer jurisdiction on the Department to decide either the USERRA reemployment claim or the USERRA discrimination claim.

The MOU expressly provides that a USERRA reemployment claim, a claim for military leave under section 10.17 of the MOU, may be appealed to the Department. Corrections contends this particular USERRA reemployment claim does not fall within the provisions of the MOU because it requires a determination that Gardner was employed by Corrections before his tour of duty was extended after September 11, 2001. This requirement of an employment prerequisite does not make this claim unique or unusual. *All* USERRA reemployment claims require that the claimant be an employee. Reemployment rights under USERRA apply only to one absent "from a position of employment." (38 U.S.C. § 4312, subd. (a).) Applying Correction's reasoning results in the unworkable requirement that all USERRA reemployment grievances must first go to the SPB for a determination that the grievant was a Corrections employee at the time of his military leave and, if so, the claim goes to the Department for a determination of any salary or benefits to which the grievant is entitled. Nothing in the MOU provides for this dual track procedure for USERRA grievances.

15

As to the discrimination claim, Corrections contends that the MOU does not mention discrimination claims in its summary of USERRA, so the MOU does not cover USERRA discrimination claims. It argues that section 10.17 of the MOU, titled "Absences for Duty in Uniformed Services," covers only military leaves, not discrimination. In addition, the MOU states that EEO complaints set forth in the DOM are not grievable under the MOU. The DOM permits filing a complaint for discrimination based on veteran status or military service.[8]

Even if Correction's analysis that the USERRA discrimination claim is not grievable under the MOU is correct, it has failed to show any prejudice in submitting the claim to the Department. Corrections argued the Department did not decide the discrimination claim and the trial court agreed.

Further, Corrections acquiesced in submitting both elements of the grievance to the Department. It failed to object at any time throughout the grievance process *and* it made a "good faith payment" after the Department's decision was rendered. While Corrections could not agree to transfer jurisdiction to the Department if the SPB had exclusive jurisdiction because the merit principle was involved, we have found the grievance did not implicate the merit principle. Having acquiesced to the procedure used, Corrections has forfeited any claim, not based on constitutional mandate, that the procedure was impermissible. (*Nickerson v. Stonebridge Life Ins. Co.* (2016) 63 Cal.4th 363, 374.)

---

[8] The Association contends a discrimination claim based on military status was not the type of discrimination claim that the SPB heard at the relevant time. It requests judicial notice of the SPB Appeals Resource Guide and the SPB Evidentiary Hearing Process to establish that the SPB heard only discrimination complaints based on physical disability, mental disability, or medical condition. Because, as we explain, we need not decide this issue, we deny the request for judicial notice.

## DISPOSITION

The judgment is reversed and the matter remanded to the trial court with directions to issue a writ of mandate ordering Corrections to comply with the Department's decision. The Association shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278.)

/s/
Duarte, J.

We concur:

/s/
Blease, Acting P. J.

/s/
Nicholson, J.

17