Filed 5/31/23  Borjon Auto Center King City v. Sentry Select Ins. Co. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| BORJON AUTO CENTER KING CITY, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SENTRY SELECT INSURANCE COMPANY, <br><br> Defendant and Appellant. | H048021 <br> (Monterey County <br> Super. Ct. No. M132410) |
| BORJON AUTO CENTER KING CITY, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SENTRY SELECT INSURANCE COMPANY, <br><br> Defendant and Appellant. | H048084 <br> (Monterey County <br> Super. Ct. No. M132410) |

## I.  INTRODUCTION

Appellant Sentry Select Insurance Company (Sentry) issued a property and liability insurance policy to respondent Borjon Auto Center King City, Inc. (Borjon Auto Center), which operated General Motors and Chrysler auto dealerships in a dealership

building located on leased premises at 905 Broadway Street in King City (hereafter 905 Broadway). The franchise agreements required Borjon Auto Center to operate at the 905 Broadway location. After the dealership building was destroyed in a fire, Borjon Auto Center made a claim to Sentry for policy benefits, including payment under the building coverage included in the policy. Sentry denied building coverage on the ground that Borjon Auto Center did not have an insurable interest in a building it did not own and was not obligated under its lease to insure.

After building coverage was denied, Borjon Auto Center brought an action against Sentry for breach of contract and breach of the covenant of good faith and fair dealing. Before the matter proceeded to a jury trial, the trial court granted Borjon Auto Center's motion for summary adjudication and ruled that Borjon Auto Center had an insurable interest in the dealership building located at 905 Broadway.

At the conclusion of the jury trial, the jurors found that Sentry had breached the insurance contract and awarded Borjon Auto Center $1,412,311 in contract damages, reduced by an offset to $1,269,726.14. The jury also found that Sentry had breached the covenant of good faith and fair dealing, and awarded Borjon Auto Center an additional $152,750.00 plus punitive damages in the amount of $6,240,000.00. An amended judgment including the awards of compensatory and punitive damages, and prejudgment interest and costs, was filed on April 7, 2020.

On appeal, Sentry contends that the judgment should be reversed because (1) Borjon Auto Center did not have an insurable interest in the dealership building; (2) Sentry did not withhold benefits owed to Borjon Auto Center under the building coverage included in the Sentry policy; (3) the jury verdict finding that Sentry breached the covenant of good faith and fair dealing is not supported by substantial evidence; and (4) the award of punitive damages is not supported by clear and convincing evidence.

2

For the reasons stated below, we find no merit in Sentry's contentions and we will affirm the judgment.[1]

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Pleadings*

The operative pleading is the first amended complaint (complaint) brought by plaintiff Borjon Auto Center against defendant Sentry and several other defendants not at issue in the present appeal.

According to the allegations in the complaint, in 2013 Borjon Auto Center's president executed an asset purchase agreement for the assets of South Valley Auto Plaza, Inc. (South Valley Auto Plaza), an auto dealership located at 905 Broadway that was owned by Vicente Lopez. The asset purchase agreement included the transfer of three General Motors auto franchises and four Chrysler auto franchises to Borjon Auto Center.

The franchise agreements allegedly required Borjon Auto Center to operate the auto dealerships from a structure that housed a show room, sales offices, and service and parts facilities. To satisfy this requirement, Borjon Auto Center leased the dealership premises at 905 Broadway from South Valley Auto Plaza. The lease terms included a initial lease period of July 16, 2013, to July 16, 2018, with three five-year options to renew the lease.

The lease terms for 905 Broadway also provided that Borjon Auto Center could make tenant improvements and Borjon Auto Center was required to obtain fire insurance on its tenant improvements. South Valley Auto Plaza was allegedly obligated to obtain fire insurance for the remainder of the dealership building.

---

[1] On the court's own motion, we ordered that the appeals in case Nos. H048021 and H048084 be considered together for the purposes of record preparation, briefing, oral argument and disposition.

3

Borjon Auto Center's president obtained comprehensive property and liability insurance from Sentry, which marketed itself as a specialty insurer for auto dealerships. The Sentry policy was renewed effective July 1, 2014 to July 1, 2015, and included, among other coverages, building coverage providing that $2,059,000 was the agreed value for replacement of the dealership building at 905 Broadway.

On October 5, 2014, a fire spread from the mobile home park adjacent to 905 Broadway and allegedly caused more than $4 million in physical property damage to Borjon Auto Center's dealership building, tenant improvements, equipment, and motor vehicles and parts. Borjon Auto Center reported the losses to Sentry, which opened a claims file and began to adjust the losses. On October 14, 2014, Sentry sent a reservation of rights letter to Borjon Auto Center, which stated that since the lease for 905 Broadway did not require Borjon Auto Center to carry insurance for the building or repair the building in the event of a fire, and its financial interest in the building was unclear, Sentry could not commit to coverage.

In November 2014 Sentry allegedly made the decision to deny coverage for damage to the dealership building at 905 Broadway because Sentry believed that Borjon Auto Center did not have an insurable interest in the dealership building. According to Borjon Auto Center, the denial of building coverage prevented it from repairing or replacing the dealership building that was essential to conducting its business. As a result, Borjon Auto Center had to surrender its franchise agreements with General Motors and Chrysler, and terminate its lease for 905 Broadway.

In April 2015 counsel for Borjon Auto Center sent a letter to Sentry requesting reconsideration of Sentry's decision to deny building coverage. In the letter, Borjon Auto Center's counsel asserted that under California law Borjon Auto Center had an insurable interest in the dealership building because it had a pecuniary interest in preserving the dealership building to hold onto its franchises, since no other dealership building was available in the King City area. Borjon Auto Center therefore sought payment of the full

4

policy limits under the building coverage to enable it to finance construction of a new dealership building.

In April 2015 Sentry cancelled Borjon Auto Center's property and liability coverage, effective October 5, 2014. In May 2015 Sentry "ratified" its denial of building coverage on the ground that Borjon Auto Center did not have an insurable interest in the dealership building and therefore the building coverage was void as a matter of law. In February 2016 Sentry attempted to return the premiums that Borjon Auto Center paid for the building coverage.

The causes of action asserted in the complaint against Sentry included breach of insurance contract (refusal to pay benefits under the building coverage), insurance bad faith (breach of the covenant of good faith and fair dealing), negligence, and declaratory relief. Borjon Auto Center sought compensatory and punitive damages and attorney fees.

**B.  *Summary Adjudication Order***

The parties jointly stipulated to move for summary adjudication of the issue of Borjon Auto Center's insurable interest pursuant to Code of Civil Procedure section 437c, subdivision (t).[2] In the December 12, 2016 order the trial court granted the motion and ordered that the parties were permitted to file cross-motions for summary adjudication as to the following issue:  "Whether BORJON had an insurable interest and/or direct financial interest in the subject Building as required for Building Coverage."

---

[2] Code of Civil Procedure section 437c, subdivision (t) provides in part:  "[A] party may move for summary adjudication of a legal issue or a claim for damages other than punitive damages that does not completely dispose of a cause of action, affirmative defense, or issue of duty pursuant to this subdivision.  [¶]  (1)(A) Before filing a motion pursuant to this subdivision, the parties whose claims or defenses are put at issue by the motion shall submit to the court both of the following:  [¶]  (i) A joint stipulation stating the issue or issues to be adjudicated.  [¶] . . . [¶]  (2) Within 15 days of receipt of the stipulation and declarations, unless the court has good cause for extending the time, the court shall notify the stipulating parties if the motion may be filed."

5

The parties then filed cross-motions for summary adjudication as to the issue of insurable interest. In the April 19, 2017 order the trial court granted Borjon Auto Center's motion and denied Sentry's motion. The trial court stated its ruling as follows: "After full consideration of the evidence, and the written and oral submissions by the parties, the Court finds there is no triable issue of material fact, and that [Borjon Auto Center] is entitled to summary adjudication of the insurable interest issue in its favor as a matter of law. The Court finds that [Borjon Auto Center] had an insurable interest for building coverage in the dealership building at 905 Broadway Street, King City, California at the time SENTRY issued its insurance policy bearing policy no. 25-53865-05 in July 2014 and at the time the dealership building was destroyed by fire in October 2014."

## C. *Jury Trial*

The case proceeded to a jury trial that was divided into three phases: (1) Liability and damages for breach of contract and liability for breach of the covenant of good faith and fair dealing; (2) Damages for breach of the covenant of good faith and fair dealing and liability for punitive damages; (3) Amount of punitive damages. The following is a brief summary of the relevant witness testimony and other evidence presented at trial in each phase.

### 1. Phase I

#### *Borjon Auto Center*

In May 2013 Anthony Mark Borjon entered into a buy-sell agreement with Lopez to buy for $700,000 the motor vehicle dealership that Lopez operated at 905 Broadway with General Motors and Chrysler franchises. The buy-sell agreement obligated Borjon to apply to General Motors and Chrysler for approval to acquire the franchises. General Motors and Chrysler required Borjon to have a minimum five-year lease for the dealership premises at 905 Broadway. Borjon then entered into a lease for 905 Broadway with Lopez, who owned the property. The lease included an initial five-year lease with

6

three options to renew the lease for an additional five years, for a total potential lease term of 20 years.

General Motors and Chrysler approved Borjon's applications to acquire the General Motors and Chrysler franchises for Borjon Auto Center. The franchise agreements required Borjon to operate Borjon Auto Center at 905 Broadway and also required the approval of General Motors and Chrysler to change the location. Borjon Auto Center started business at 905 Broadway in August 2013.

In the early morning hours of October 5, 2014, Borjon received a call informing him there was a fire at Borjon Auto Center. The fire had spread from a nearby mobile home park and destroyed the dealership building, including the showroom and service department, at 905 Broadway. After the fire, Borjon terminated his lease because he no longer had a dealership building at 905 Broadway.

Fred Sherwood was a dealer network manager for Chrysler who had reached out to Borjon to purchase the King City dealership from Lopez. Sherwood knew that Borjon was already operating a profitable motor vehicle dealership in Paso Robles. Sherwood's review of Borjon Auto Center's financial statements showed that Borjon Auto Center had gross sales of about $3 million for the five months that Borjon Auto Center operated in 2013 and gross sales of about $10 million for the nine months of operation in 2014. Sherwood was not surprised that Borjon Auto Center's tax return for 2013 showed a loss of $112,000, explaining that it usually takes three years for a new dealership to become profitable. The financial statements also showed that Borjon Auto Center was starting to show a profit before the fire.

Borjon Auto Center's forensic accounting expert testified that in his opinion, using financial data from Borjon's profitable dealership in Paso Robles as a yardstick, the total of past and future profits (2016 through 2029) that Borjon Auto Center lost after ceasing operations was $2,966,962. Sentry's forensic accounting expert testified to the contrary that Borjon Auto Center was not profitable, with the exception of a small profit in

7

September 2014, and that Borjon Auto Center would not have been able to compete with larger dealerships in the region.

### *Sentry Insurance Policy and Borjon Auto Center's Claim*

Borjon understood that the lease for 905 Broadway was a "triple net lease," which obligated him, as the lessee, to obtain fire insurance and building coverage. Borjon relied on his longtime insurance agent, Steve Milton, to pick the right coverages for Borjon Auto Center. Milton gave Borjon a Sentry promotional brochure that advertised Sentry as one of the nation's leading auto dealership insurers and stated that Sentry would provide "[c]ustomized coverages and services, which focus on protecting your dealership against losses that could disrupt operations or jeopardize financial well-being. [¶] . . . [¶] [And p]rompt, fair claims administration which allows you to focus on getting back to business."

Borjon told Milton that he had leased the dealership building at 905 Broadway, and Milton reported that the building was leased on Borjon's application for dealership insurance coverage from Sentry. Sentry issued the original policy for Borjon Auto Center effective August 1, 2013. The Sentry policy was renewed effective July 1, 2014, through July 1, 2015. The renewal policy was in effect at the time of the October 2014 fire.

Sentry's renewal policy for Borjon Auto Center provided building coverage for 905 Broadway, which stated in part: "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." The policy also stated: "We will not pay you more than your financial interest in the Covered Property." The policy limit for the building coverage was $2,059,000.

Borjon reported the October 5, 2014 dealership building fire to Milton, his insurance agent, soon after learning of the fire. On October 7, 2014, Borjon met with Sentry's claims adjuster, Tim Romero, and gave him a copy of the lease for Borjon Auto

8

Center.  On October 14, 2014, Borjon received an email from Romero with Sentry's reservation of rights letter attached.  Borjon understood the reservation of rights letter to state that Sentry would not cover the building loss because he did not have a financial interest in the property at 905 Broadway.

A couple of weeks later, Romero requested that Borjon provide him with copies of his agreements with General Motors and Chrysler, stating in an email that if Borjon Auto Center was "unable to permanently relocate elsewhere because of these agreements that could impact our evaluation of your insurable interest in the building."  Borjon looked for a facility in King City that could serve as a replacement dealership, but found nothing suitable.

Borjon subsequently received a November 18, 2014 letter from Sentry's counsel that denied building coverage.  He then retained counsel who made a written settlement demand on Sentry for wrongful denial of building coverage.  Borjon's counsel explained in the demand letter that Borjon wanted to buy property in King City and build a new dealership building, but Borjon could not afford to construct a new dealership building without payment under the building coverage.

Borjon told Chrysler's dealer network manager Sherwood that he wanted to stay in business in King City after the fire, but Sherwood advised him that Chrysler needed a letter of voluntary termination of his Chrysler franchise because the Borjon Auto Center dealership did not exist anymore.  However, Sherwood also told Borjon that if he provided a written plan to Chrysler by December 1, 2014, regarding his plans to rebuild the dealership, Chrysler would work with him to continue as a Chrysler dealer.

Similarly, General Motor's regional manager, Gina Toben, discussed with Borjon that General Motors needed to know whether Borjon was going to rebuild or if he had a plan for the King City dealership.  Michael Stinson, Chevrolet zone manager, stated that General Motors would give a dealer plenty of time to reestablish his or her business after it was lost in a fire.  The network placement manager for Chrysler, John Tangeman,

9

similarly stated that Chrysler would want to give a dealer who had experienced a devastating event the opportunity to propose a plan for another facility.

Borjon decided to voluntarily terminate his Borjon Auto Center franchises with General Motors and Chrysler after Sentry denied his claim for building coverage and, as a result, he could not rebuild the dealership building. He also wanted to avoid the "black mark" of an involuntary termination on his ability to obtain another dealership.

### Sentry's Denial of Building Coverage

Sentry's underwriter witnesses testified that Sentry's underwriting procedures do not include a review of a lease before approving property coverage. Sentry's underwriting procedures also do not include a determination of whether the policyholder has an insurable interest in the building from which the policyholder operates. The senior underwriter who analyzed the renewal of Borjon Auto Center's Sentry policy did not know whether Borjon owned or leased the dealership building.

After Borjon notified Sentry of Borjon Auto Center's fire loss, claims adjuster Romero began to investigate Borjon's claims. Romero conducted a site visit on October 7, 2014. While at the site Romero met Lopez, the property owner, and discovered that Borjon was a tenant at 905 Broadway. Romero then asked for a copy of the lease and after reviewing it, determined that the landlord was responsible for obtaining building insurance and repairing the building, and Borjon had no obligation as a lessee to obtain building insurance.

However, on October 8, 2014, Sentry advanced Borjon $245,000 against his "final proven" claims under the Sentry renewal policy. Sentry also made payments totaling nearly $2 million under other coverages in Borjon Auto Center's policy, including $424,963.21 under the business income coverage. Borjon was satisfied with Sentry's payments under the business income and personal property coverages in the Sentry renewal policy.

10

Romero's investigation of Borjon Auto Center's insurable interest in the dealership building included retaining counsel and reviewing the Sentry policy, the lease, and the dealership agreement with General Motors. Romero also gathered information about Borjon Auto Center's purchase of building coverage. His investigation did not include conducting a recorded interview with Borjon. In the October 14, 2014 reservation of rights letter Romero informed Borjon that Sentry could not commit to coverage for the building loss because it was unclear whether Borjon had a financial interest in the building.

Romero had requested the dealership agreements, as stated in his October 21, 2014 letter to Borjon, to determine whether Borjon's inability to permanently relocate the Borjon Auto Center dealership would impact Sentry's evaluation of his insurable interest in the dealership building. On November 4, 2014, Borjon advised Romero that he could not find any place to relocate Borjon Auto Center within his dealership territory. By that time, Romero had learned that the dealership building owner, Lopez, had an insurance policy with building coverage policy limits of approximately $870,000. Since Sentry's construction consultant had determined that the building loss exceeded $2.3 million, Romero knew that there was a shortfall of $1.4 million for building repairs.

Sentry's decision regarding Borjon Auto Center's claim for payment under the building coverage in Borjon Auto Center's policy involved several levels of Sentry claims management as well as Romero. Two days after the fire, Mark Trautschold, vice president of claims and chief claims officer for Sentry, received an October 7, 2014 email regarding the insurable interest issue. The October 7, 2014 email had been sent to Sentry senior vice president, Mark Hackl, by Dave Hartman, Sentry vice president of dealer operations, after a conference call with Romero. In the October 7, 2014 email, Hartman stated that Borjon was mistaken that he had a triple net lease requiring building insurance and Borjon did not have an insurable interest in the dealership building. Hartman also

11

mentioned refunding the premium for the building coverage in the October 7, 2014 email and stated, " 'We may be able to walk away from the building loss.' "

Sentry's decision-making process subsequently included "VP protocol" meetings with senior claims managers, company vice presidents, and Romero to discuss Borjon Auto Center's claim under the building coverage and to determine whether Borjon Auto Center had an insurable interest in the dealership building. The VP protocol meetings did not include review of Borjon's dealership agreements, and no inquiry was made as to Borjon's reasons for buying building coverage. No written or recorded statements were reviewed, which was contrary to Sentry's policy manual that requires such statements when a coverage dispute is likely.

Trautschold, Sentry vice president of claims, did not review Borjon Auto Center's lease, the dealership agreements, or the purchase agreement for Borjon Auto Center, prior to the November 18, 2014 VP protocol meeting at which the decision to deny building coverage was made. However, Trautschold would have expected an auto dealer to be dependent on the building the dealership occupied to maintain their dealership franchises.

In a letter dated November 18, 2014, Sentry denied Borjon's claim for payment under the building coverage of Borjon Auto Center's policy. Regarding insurable interest, the letter states: "Mr. Borjon is under no obligation to pay for any part of the direct physical loss to the building, which is all that the building coverage would protect. Moreover, Sentry will 'not pay [the insured] more than [its] financial interest in the Covered Property.' Borjon Auto has no direct financial interest in the building. As such, the building coverage, which was mistakenly obtained by Mr. Borjon, is void because Mr. Borjon has no insurable interest in the building."

Sentry's decision to void the building coverage for lack of an insurable interest was based on Borjon Auto Center's policy and the lease between Borjon Auto Center and the landlord. The Sentry claims managers also determined that Borjon Auto Center was

not entitled to building coverage because "to pay a tenant for a building that he did not own, nor was required to rebuild, would be considered a windfall."

Borjon's coverage counsel sent an April 21, 2015 letter to Sentry's coverage counsel challenging Sentry's denial of building coverage and explaining that Borjon had a direct financial interest in the dealership building because he could not meet his contractual obligations to General Motors and Chrysler without the dealership building. The April 21, 2015 letter also stated: "It is undisputed that Borjon Auto Center had a pecuniary interest in preserving the one and only building available to the insured for operating its [General Motors and Chrysler] auto dealerships. Unlike an insurance brokerage or law firm, which could relocate in short time to another fungible building, the insured here had no alternative. Unless Sentry provided full insurance benefits to repair, rebuild or replace the building at 905 Broadway Street, Borjon Auto Center was out of business." (Fn. omitted.) Further, the April 21, 2015 letter requested that Sentry rectify its April 6, 2015 decision to terminate Borjon Auto Center's coverage effective on October 5, 2014, at 12:01 am, which was shortly before the fire spread to the dealership premises.[3] Sentry's records do not show that the April 21, 2015 letter sent by Borjon's coverage counsel was ever discussed by Sentry's claims management.

### Expert Testimony

Timothy Lee Walker testified on behalf of Borjon Auto Center as an expert in claims handling. Walker is a semi-retired attorney whose practice specialized in representing insurance companies and insureds, including training claims personnel and serving as a consultant in cases involving the issue of whether an insurance company acted in accordance with the principles of good faith and fair dealing. To evaluate Sentry's claims handling with respect to Borjon Auto Center's claim under the building

---

[3] At trial, the evidence showed that Sentry rescinded only the building coverage.

coverage, Walker reviewed the witness depositions and the thousands of documents produced during discovery.

In Walker's opinion, Sentry violated the three principles that apply to insurance claims: (1) "the insurance company has the obligation to give equal consideration to the interest of its insured as it gives to its own;" (2) "an insurance company has a duty to conduct a prompt, thorough, fair and unbiased investigation into the facts of each claim;" and (3) "an insurance company similarly has a duty to diligently search for facts that support coverage for their insured, not defeat coverage."

According to Walker, Sentry claims managers violated these three principles with respect to Borjon Auto Center's claim for building coverage by (1) failing to review Borjon's dealership agreements in making their determination of whether Borjon Auto Center had an insurable interest in the dealership building; (2) conducting an investigation that was biased and not thorough since the investigation did not diligently search for facts that would support coverage; and (3) rescinding the building coverage due to the terms of Borjon Auto Center's lease after the claim was made, although Sentry did not review the lease before issuing the policy and did not take a recorded statement from Milton, Borjon Auto Center's insurance agent, who procured the policy. In Walker's opinion, Sentry acted unreasonably in failing to pay Borjon the building coverage's policy limits of $2,059,000 because the dealership building was a total loss.

Kelley Beck testified as a claims handling expert on behalf of Sentry. Beck is an attorney who has specialized in insurance issues during his nearly 40-year legal career, including representing numerous insurance companies. He formed his opinions about Sentry's claims handling with respect to Borjon Auto Center's claim for building coverage after reviewing the witness depositions in this case and the thousands of pages of documents produced during discovery.

Beck concluded that Sentry had acted reasonably and within industry custom and practice in denying Borjon Auto Center's claim for building coverage because Sentry's

14

investigation was fair and thorough and Borjon Auto Center did not have a financial interest in the dealership building. Beck noted that the dealership agreements and the lease for 905 Broadway did not obligate Borjon Auto Center to purchase fire insurance. Also, Beck determined that the dealership agreements did not impose a monetary penalty if Borjon failed to maintain Borjon Auto Center at 905 Broadway. Beck further determined that Sentry claims handlers could reasonably conclude from Borjon's communications that Borjon was not interested in rebuilding at 905 Broadway.

### *Jury Verdicts—Phase I*

The trial court's jury instructions in phase I included, in part, the following instruction regarding insurable interest: "Borjon Auto Center . . . had an insurable interest for building coverage in the dealership building at 905 Broadway Street, King City, at the time Sentry issued its insurance policy and at the time the dealership was destroyed by fire. [¶] You are to decide what is the extent, if any, of Borjon's insurable interest in the building at the time of the fire. You are to decide the value of Borjon's interest and not the value of the building."

The special verdict forms for phase I asked the jurors to make findings regarding the causes of action for breach of contract—duty to pay a covered claim and breach of the covenant of good faith and fair dealing. As to breach of contract—duty to pay a covered claim, the jurors found that Borjon Auto Center had suffered a loss covered under the Sentry policy and the amount of the loss that Sentry had failed to pay Borjon Auto Center was $1,412,311. As to the cause of action for breach of the covenant of good faith and fair dealing, the jurors found that Sentry's failure to pay policy benefits was unreasonable or without proper cause and was a substantial factor in causing harm to Borjon Auto Center.

### 2. Phase II

Phase II of the jury trial concerned the issues of damages for breach of the covenant of good faith and fair dealing and Sentry's liability for punitive damages. The

15

parties' claims handling experts, Walker and Beck, testified again as the only witnesses in phase II.

### *Expert Testimony*

According to Walker, Sentry did not give equal consideration to the interests of Borjon Auto Center from the outset of its investigation, as shown by the October 7, 2014 email in which Hartman, Sentry vice president of dealer operations, stated only two days after the fire that Borjon Auto Center did not have an insurable interest in the dealership building and Sentry might be able to walk away from the building loss. Walker found the failure of Trautschold, Sentry vice president of claims, upon his receipt of the October 7, 2014 email to remind everyone involved to give equal consideration to the interests of the insured to be "offensive and reprehensible." Walker also found the failure of Sentry's top claims management to review Borjon Auto Center's dealership agreements before making the decision to deny building coverage to be "offensive and reprehensible." Additionally, Walker concluded that the failure of Sentry's top claims management to review the April 2015 letter that Borjon Auto Center's coverage counsel sent to Sentry challenging the denial of building coverage constituted a "conscious disregard" of Borjon Auto Center's interests in making the decision to void building coverage.

Beck, Sentry's expert, testified that Sentry investigated Borjon Auto Center's possible lost profits as a result of the fire, including retaining a forensic accountant who determined that Borjon Auto Center was operating at a loss and did not lose any profits. Therefore, in Beck's opinion Sentry did not knowingly disregard any amount of possible lost profits in its decision to deny building coverage.

### *Jury Verdicts—Phase II*

The special verdict forms for phase II asked the jurors to make findings regarding Borjon Auto Center's damages for breach of covenant of good faith and fair dealing and Sentry's liability for punitive damages. The jurors found that Borjon Auto Center's

damages included the amount of $152,750 for "[p]ast economic loss for lost profits" and zero for "[f]uture economic loss for lost future profits."

As to liability for punitive damages, the special verdict form asked the jurors, "Did Sentry Select Insurance, by clear and convincing evidence, engage in conduct constituting malice, oppression, or fraud?" The jurors answered, "Yes." The special verdict form also asked, "Was the conduct constituting malice, oppression or fraud committed by one or more officers, directors, or managing agents of Sentry Select Insurance acting on behalf of Sentry Select Insurance?" The jurors answered, "Yes."

### 3. Phase III

Phase III concerned the amount of punitive damages. No evidence was presented except the parties' stipulation that Sentry's "net worth, based on its March 31, 2019, financial statement filed with the Department of Insurance, is $229,250,319." The trial court informed the jurors of the stipulation as part of the jury instructions.

After hearing counsel's arguments, the jurors were asked the following question on the special verdict form: "What amount of punitive damages, if any, do you award [Borjon Auto Center]?" The jurors responded, "$6,240,00."

### D. *Posttrial Motions and Judgments*

The January 6, 2020 judgment included the trial court's rulings on three posttrial motions. First, the court granted Borjon Auto Center's motion for attorney fees pursuant to *Brandt v. Superior Court* (1985) 37 Cal.3d 813 (*Brandt*) and awarded Borjon Auto Center $744,962.20 in *Brandt* fees as additional damages caused by Sentry's breach of the implied covenant of good faith and fair dealing.

Second, the trial court granted Sentry's motion for a partial offset based on a prior settlement between Borjon Auto Center and other parties who did not participate in the trial. The court determined that Sentry was entitled to an equitable offset of $142,584.86, which reduced the amount of the jury's verdict for breach of contract to $1,269,726.14.

17

Third, the trial court granted Borjon Auto Center's motion for an award of prejudgment interest as follows: "[T]he Court award[s] Borjon [Auto Center] prejudgment interest at the rate of seven (7) percent per annum on the sum of $1,269,726.14 from April 19, 2017, the date of the entry of the Court's order granting Borjon's motion for summary adjudication of the insurable interest issue, through the date of entry of judgment in the following amount . . . $240,831.39 (interest)."

The January 6, 2020 judgment did not enter a net amount of the judgment and reserved the amount of Borjon Auto Center's costs. Thereafter, Sentry moved for a new trial on the grounds that (1) the compensatory and punitive damages awards were excessive; (2) the evidence was insufficient to support the verdict for breach of the covenant of good faith and fair dealing; and (3) evidentiary and instructional errors. The trial court denied the motion for new trial in the April 7, 2020 order.

After ruling on the parties' posttrial motions, the trial court filed an amended judgment on April 7, 2020, that awarded the following amounts to Borjon Auto Center: (1) compensatory damages for breach of contract in the amount of $1,269,726.14; (2) damages for breach of the covenant of good faith and fair dealing in the amount of $152,750.00; (3) punitive damages in the amount of $6,240,000.00; (4) *Brandt* attorney fees in the amount of $716,445.23; (5) prejudgment interest in the amount of $240,831.39; and (6) costs in the amount of $119,747.90. The amended judgment did not set forth a net sum.

On appeal, Sentry has not provided any argument specifically addressing the merits of the order denying Sentry's motion for new trial. Sentry has also not provided any argument challenging the amounts awarded in the judgment for either *Brandt* attorney fees, prejudgment interest, or costs.

### III. DISCUSSION

The issues raised by Sentry on appeal include whether the April 7, 2020 amended judgment should be reversed because (1) Borjon Auto Center did not have an insurable

18

interest in the dealership building; (2) Sentry did not withhold benefits owed to Borjon Auto Center under the building coverage included in the Sentry policy; (3) the jury verdict finding that Sentry breached the covenant of good faith and fair dealing is not supported by substantial evidence; and (4) the award of punitive damages is not supported by clear and convincing evidence.  We will address each issue in turn.

### A.  *Insurable Interest*

Sentry contends that the trial court erred in ruling that Borjon Auto Center had an insurable interest in the dealership building at 905 Broadway and the judgment should be reversed in its entirety for that reason alone.  We understand Sentry to thereby seek review of the trial court's order granting summary adjudication in Borjon Auto Center's favor on the insurable interest issue.  Although the summary adjudication order is a nonappealable intermediate order, we have jurisdiction to review the order on appeal from the final judgment.  (Code Civ. Proc., § 906; see *Travelers Casualty & Surety Co. v. Transconinental Ins. Co*. (2004) 122 Cal.App.4th 949, 952.)

### 1.  Background

As we have noted, prior to trial the parties filed cross-motions for summary adjudication as to the issue of "[w]hether BORJON had an insurable interest and/or direct financial interest in the subject Building as required for Building Coverage."  Borjon Auto Center argued in its motion for summary adjudication that it had an insurable interest because it lawfully contracted for insurance to repair, rebuild, or replace the dealership building that was essential to its franchise survival, since it had a legitimate pecuniary interest in preserving the dealership building when it purchased the insurance and suffered the loss.  In support of its motion, Borjon Auto Center emphasized that it was undisputed that it was the sole occupant of the building, it operated its business from the building, its franchise rights were tied to the location and depended on the building, and it was directly injured when the building was destroyed.  Borjon Auto Center also

19

argued that to prevail on its motion, Borjon Auto Center only needed to prove any pecuniary interest in preservation of the property.

Sentry argued in its motion for summary adjudication that Borjon Auto Center did not have an insurable interest because it was undisputed that Borjon Auto Center did not own the dealership building, was not required under the terms of its lease to repair the building or procure building coverage, and its loss of business income was paid under the business income coverage of the Sentry policy. Sentry maintained that since Borjon Auto Center lacked an insurable interest in the building, the building coverage was void as against public policy pursuant to Insurance Code section 280.

In the April 19, 2017 order the trial court granted Borjon Auto Center's motion for summary adjudication of the insurable interest issue and denied Sentry's motion. The court ruled that there were no triable issues of material fact and that Borjon Auto Center was entitled to summary adjudication of the insurable interest issue in its favor as a matter of law, finding that Borjon Auto Center had an insurable interest for building coverage in the dealership building at the time Sentry issued its insurance policy and at the time the building was destroyed by fire.

The trial court stated in the April 19, 2017 order that "[t]he following evidence is key to the Court's determination: [Borjon Auto Center] had seven franchise dealership agreements, three with GM and three with Chrysler [*sic*], granting exclusive rights to sell and service vehicles in the King City region. The agreements required that [Borjon Auto Center] operate from the dealership building at 905 Broadway Street, King City, California. [Borjon Auto Center] could not operate from another building without permission of the franchisors. Borjon Auto Center had a right to exclusive use of the dealership building under a lease providing an initial term of five years, plus three options to renew, each for an additional five-year period. [Borjon Auto Center] required a building with a show room, sales offices, and service and parts facilities to operate its business as a GM and Chrysler franchise dealer. [Borjon Auto Center] presented

20

evidence that the dealership building was the only building available to [Borjon Auto Center] in the King City region with a show room, sales offices, and service and parts facilities. SENTRY did not present any evidence that another building with similar traits was available to [Borjon Auto Center] after the fire, or that GM and Chrysler would approve of moving the dealership business to another building if one were even available."

As a result of the order granting summary adjudication of the insurable interest issue in Borjon Auto Center's favor, the trial court instructed the jurors that Borjon Auto Center had an insurable interest in the dealership building at 905 Broadway and they were to determine the value of Borjon Auto Center's insurable interest.

Our evaluation of Sentry's contention that the trial court erred in granting Borjon Auto Center's motion for summary adjudication begins with the standard of review.

### 2. Standard of Review

A party may move for summary judgment or, in the alternative, summary adjudication. (Code Civ. Proc. § 437c, subds. (f)(1) & (2), (t)(5).) A motion, such as in this case, under Code of Civil Procedure section 437c, subdivision (t) for summary adjudication of a legal issue that does not completely dispose of a cause of action, an affirmative defense, or an issue of duty "proceed[s] in all procedural respects as a motion for summary judgment." (*Id.*, § 437c, subd. (t)(5).)

The moving party "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if [the movant] carries [this] burden of production," the burden of production shifts to the opposing party "to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

In determining whether the parties have met their respective burdens, "the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences

21

[citations], in the light most favorable to the opposing party." (*Aguilar, supra*, 25 Cal.4th at p. 843.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850, fn. omitted.)

"In reviewing a trial court's grant of summary judgment [or summary adjudication], . . . ' "[w]e take the facts from the record that was before the trial court when it ruled on that motion" ' and ' " ' "review the trial court's decision de novo. . . .' " ' " [Citations.]" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039.) "Furthermore, '[i]t is axiomatic that we review the trial court's rulings and not its reasoning.' [Citation.]" (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336.)

To determine whether the undisputed facts support a finding that Borjon Auto Center had an insurable interest in the dealership building, we first review the doctrine of insurable interest.

### 3. Doctrine of Insurable Interest

The doctrine of insurable interest is codified in Insurance Code section 280 et seq. "If the insured has no insurable interest, the contract is void." (Ins. Code, § 280.) An "insurable interest" is defined under the Insurance Code as follows: "Every interest in property, or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might directly damnify the insured, is an insurable interest." (*Id.*, § 281.) The word "damnify" has been construed by its dictionary definition to mean " 'to cause loss or damage to.' " (*Wexler v. California FAIR Plan Assn.* (2021) 63 Cal.App.5th 55, 72.)

The California Supreme Court established long ago that an insurable interest in property may exist without the insured having legal title to the property: "[I]t is not necessary that the insured person have a legal interest, but that an equitable interest is

sufficient.  The title, whether legal or equitable, may be defective or even bad, provided the insured has possession and use; even a valid equitable title is not requisite.  It is held sufficient that the insured has a direct pecuniary interest in the preservation of the property, and that he [or she] will suffer a pecuniary loss as an immediate and proximate result of its destruction.  [Citations.]" (*Davis v. Phoenix Ins. Co.* (1896) 111 Cal. 409, 414 (*Davis*).)

Further, "[i]n common parlance, we speak of a house as being insured, but, strictly speaking, it is not the house but the interest of the owner therein that is insured, and, whether that interest is founded upon a legal title, an equitable title, a lien, or such other lawful interest therein as will produce a direct and certain pecuniary loss to the insurer by its destruction, he [or she] has an insurable interest therein." (*Davis*, *supra*, 111 Cal at p. 414.)  Thus, it has been held that "[d]ifferent persons may have separate insurable interests in the same property, as, for example, a mortgagor and a mortgagee, a lessor and lessee." (*Alexander v. Security-First National Bank* (1936) 7 Cal.2d 718, 723; see also *California Food Service Corp. v. Great American Ins. Co.* (1982) 130 Cal.App.3d 892, 897 [restaurant operator that subleased restaurant building destroyed by fire had an insurable interest in the building].)

The Insurance Code further provides, with exceptions not relevant here, that "the measure of an insurable interest in property is the extent to which the insured might be damnified by loss or injury thereof." (Ins. Code § 284.)  Since insurance is a contract of indemnity, the insured's right to recover under the insurance policy is limited to the party's insurable interest in the property, not exceeding the limit fixed by the policy. (*Davis*, *supra*, 111 Cal. at p. 415.)  "If his [or her] interest extends to the whole of the subject matter of the property, its value, up to the sum named in the policy, is the measure of his [or her] right to recover.  If his [or her] interest falls short of the whole, his [or her] right is limited, not by the value of the property, but by the value of his [or her] interest." (*Ibid.*)

Thus, as the California Supreme Court stated, "[i]t is a principle of long standing that a policy of fire insurance does not insure the property covered thereby, but is a personal contract indemnifying the insured against loss resulting from the destruction of or damage to his [or her] interest in that property. [Citations.]" (*Russell v. Williams* (1962) 58 Cal.2d 487, 490.)

### 4. Analysis

Sentry contends that Borjon Auto Center did not have an insurable interest in the dealership building at 905 Broadway for several reasons: (1) Borjon Auto Center did not own the building; (2) Borjon Auto Center did not have a duty to repair the building or insure the building against fire risk; (3) Borjon Auto Center housed its dealership business in the building and did not use the building itself as its business; and (4) Borjon Auto Center did not demonstrate a "direct pecuniary loss" from the destruction of the dealership building. Sentry maintains that "Borjon Auto's interest in the use of the building for its business does not equate with an interest in the *building itself*."

Borjon Auto Center responds that the trial court correctly ruled that it had an insurable interest because it had a direct pecuniary interest in the preservation of the dealership building to operate its business for the following reasons: (1) Borjon Auto Center had exclusive use of the building under a long-term lease; (2) Borjon Auto Center's franchise agreements with General Motors and Chrysler required that the dealership building house a show room, sales offices, and service and parts facilities, which the building at 905 Broadway provided; (3) the franchise agreements required Borjon Auto Center to operate at 905 Broadway and Borjon could not conduct business in another location without the franchisors' approval; and (4) no other building was available after the fire that would meet the requirements of Borjon Auto Center's franchise agreements.

We determine that the undisputed facts show that Borjon Auto Center had "a direct pecuniary interest in the preservation" of the dealership building at 905 Broadway,

24

such that Borjon Auto Center would "suffer a pecuniary loss as an immediate and proximate result of its destruction. [Citations.]" (*Davis*, *supra*, 111 Cal. at p. 414.) Significantly, the franchise agreements with General Motors and Chrysler required Borjon Auto Center to operate at 905 Broadway, and Borjon Auto Center could not change the location of the dealership without their approval. Additionally, the building at 905 Broadway met the franchisors' requirements for operation of a General Motors dealership and a Chrysler dealership. Sentry does not dispute the fact that dealership building at 905 Broadway was the only building available in the King City region with a show room, sales offices, and service and parts facilities, and that no suitable replacement building was available after the fire.

Since it is undisputed that Borjon Auto Center operated General Motors and Chrysler dealerships under franchise agreements that were tied to the existence of the dealership building at 905 Broadway, Borjon Auto Center had a direct pecuniary interest in the dealership building, such that the destruction of the dealership building due to fire resulted in Borjon suffering the loss of his franchises and the Borjon Auto Center business. (See *Davis*, *supra*, 111 Cal. at p. 414.) Accordingly, we conclude the trial court did not err in ruling that Borjon Auto Center had a sufficient financial interest in the preservation of the dealership building to support a finding of an insurable interest. Having reached this conclusion under California law, we need not address the decisions of other jurisdictions that are relied upon by the parties. (See *People v. Troyer* (2011) 51 Cal.4th 599, 610 [out-of-state decisions are not binding on California courts].)

We next turn to Sentry's appellate challenges to the jury verdicts in Borjon Auto Center's favor with respect to breach of contract and damages.

## B. *Breach of Contract and Damages*

Regarding Borjon Auto Center's claims for breach of contract--duty to pay a covered claim and damages, which were tried in phase I, the jurors found that (1) Borjon Auto Center had suffered a loss covered under the Sentry policy; and (2) the amount of

25

the loss that Sentry had failed to pay Borjon Auto Center was $1,412,311. In the proceedings below, the parties observed that the amount of $1,412,311 matched the amount that Borjon Auto Center's forensic accountant had calculated as Borjon Auto Center's lost profits from 2016 through 2023.

Sentry contends that Borjon Auto Center did not prove that it was entitled to payment under the building coverage, since the Sentry policy provided only that it would pay for direct physical loss to the building, including paying the value of the building, replacement cost, or the costs of repair or rebuilding. According to Sentry, the building coverage therefore did not cover indirect losses flowing from the physical damage to the dealership building, such as Borjon Auto Center's lost profits. Sentry asserts that Borjon Auto Center's business losses were covered under the business income coverage of the Sentry policy, and therefore nonpayment under the building coverage does not constitute breach of contract.

Borjon Auto Center argues to the contrary that the building coverage in the Sentry policy was triggered by the physical damage to the dealership building, and lost profits were recoverable under the building coverage as a measure of Borjon Auto Center's economic losses due to the physical damage. As we will discuss, we agree.

### 1. Cause of Action for Breach of Contract

The elements of a cause of action for breach of an insurance contract are "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." (*Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 830.) The measure of damages is " 'the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom' (Civ. Code, § 3300), provided the damages are 'clearly ascertainable in both their nature and origin' (Civ. Code, § 3301.)" (*Erlich v. Menezes* (1999) 21 Cal.4th 543, 550.) " 'An insurer which denies benefits reasonably, but incorrectly, will be liable only for damages flowing from

26

the breach of contract, i.e., the policy benefits.' [Citation.]" (*Mosley v. Pacific Specialty Ins. Co.* (2020) 49 Cal.App. 5th 417, 436.)

### 2. Analysis

Sentry contends that it did not breach the insurance contract because it had no obligation under the building coverage to pay for lost profits. However, the California Supreme Court has instructed that an intangible economic loss, such as lost profits, may be recovered as " ' "a measure of damages to physical property which is within the policy's coverage." [Citations].' [Citation.]" (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 (*Waller*), quoting *Giddings v. Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 219.) Therefore, since damage to physical property was covered by the Sentry policy's building coverage for 905 Broadway, Borjon Auto Center could recover lost profits resulting from the physical destruction of the dealership building.

Moreover, "[l]ost profits may be recoverable as damages for breach of a contract. '[T]he general principle [is] that damages for the loss of prospective profits are recoverable where the evidence makes reasonably certain their occurrence and extent.' [Citation.]" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773-774.) In other words, "[t]he only prerequisite to recovery of lost profits is proximate causation: the lost profits must be the natural and direct consequences of the breach. This rule is to be applied in any action for damages for breach of contract. (Civ. Code, § 3300.)" (*Brandon & Tibbs v. George Kevorkian Accountancy Corp.* (1990) 226 Cal.App.3d 442, 457.) "We review a lost profits award for substantial evidence. [Citation.]" (*Orozco v. WPV San Jose, LLC* (2019) 36 Cal.App.5th 375, 398.)

In this case, the trial evidence showed that the Borjon Auto Center's dealership building at 905 Broadway was destroyed by fire and Borjon could not afford to rebuild without payment under the building coverage of the Sentry policy. Lacking the dealership building required by his General Motors and Chrysler franchise agreements

27

in order to maintain his franchises, Borjon was compelled to voluntarily terminate his franchise agreements and thereby lose the Borjon Auto Center business. The trial evidence also included the opinions of Borjon Auto Center's forensic accountant that the total of past and future profits that Borjon Auto Center lost after ceasing operations due to the fire was $2,966,962 for the period of 2016 through 2029, and $1,412,311 for the period of 2016 through 2023. Accordingly, substantial evidence supports the jury verdict that the amount of the loss that Sentry had failed to pay Borjon Auto Center under the building coverage was $1,412,311.

We are not convinced by Sentry's argument that lost profits are not recoverable for breach of contract based on the failure to pay benefits under the building coverage where, as here, the policy also includes coverage for loss of business income. The general rule is that "insurance policies are to be read as a whole. That means where multiple coverages are afforded, they are read as covering different, separate items. [Citation.]" (*Adamo v. Fire Ins. Exchange* (2013) 219 Cal.App.4th 1286, 1295.) Here, the building coverage expressly covered a different item—damages resulting from physical damage to the insured building—from the business income coverage, which expressly covered the loss of business income during the suspension of the insured's operations due to physical damage to property during the period of restoration, not to exceed 12 months.[4] Sentry has provided no authority for the proposition that "loss of business income" during a 12-month period of restoration is same item as lost profits due the destruction of the building necessary to the survival of the insured's business.

---

[4] The Sentry renewal policy states in part: "We will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'. The 'suspension' must be caused by direct 'physical loss of or damage to property' at premises which are described in the Declarations and for which Business Income coverage is indicated in the Declarations." "We will pay for loss that occurs during the shorter of the following: [¶] a. The 'period of restoration' or; [¶] b. The period that begins on the first day of the 'period of restoration' and continues for the number of months shown in the Declarations [12 months]."

For these reasons, we find no merit in Sentry's challenge to the jury verdicts on breach of contract and damages.

## C. *Breach of the Covenant of Good Faith and Fair Dealing*

The jurors found that Sentry's failure to pay policy benefits was unreasonable or without proper cause and was a substantial factor in causing harm to Borjon Auto Center, and awarded Borjon Auto Center damages in the amount of $152,750 for "[p]ast economic loss for lost profits" and zero for "[f]uture economic loss for lost future profits."

Sentry argues on appeal that the award for breach of the covenant of good faith and fair dealing should be reversed because perfection is not required of an insurer. Alternatively, Sentry argues that it cannot be held liable for bad faith because there was a genuine dispute as to whether Borjon Auto Center had an insurable interest in the dealership building. Borjon Auto Center responds that substantial evidence supports the jury's findings, and there was no genuine dispute regarding insurable interest because Sentry had an obligation to apply California's broad insurable interest law.

### 1. The Cause of Action for Breach of the Covenant of Good Faith and Fair Dealing

The general rules pertaining to a claim for breach of the covenant of good faith and fair dealing are well established. "The law implies in every contract, including insurance policies, a covenant of good faith and fair dealing. 'The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the agreement's benefits. To fulfill its implied obligation, an insurer must give at least as much consideration to the interests of the insured as it gives to its own interests. When the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort.' [Citation.]" (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720 (*Wilson*).)

29

Thus, "when benefits are due an insured, 'delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant because' they frustrate the insured's right to receive the benefits of the contract in 'prompt compensation for losses.' [Citation.]" (*Waller*, *supra*, 11 Cal.4th at p. 36.)

The elements of a cause of action for breach of the covenant of good faith and fair dealing are "(1) benefits due under the policy were withheld and (2) the reason for withholding the benefits was unreasonable or without proper cause. [Citations.]" (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 949 (*Century*).) "We evaluate the reasonableness of the insurer's actions and decision to deny benefits as of the time they were made rather than with the benefit of hindsight. [Citation.]" (*Ibid.*) "[T]he ultimate test is whether the insurer's conduct was unreasonable under all of the circumstances. [Citation.]" (*Graciano v. Mercury General Corp.* (2014) 231 Cal.App.4th 414, 427.)

### 2. Substantial Evidence

An evidentiary challenge to a jury verdict finding that the defendant insurer breached the covenant of good faith and fair dealing is reviewed under the substantial evidence standard of review. (*Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 921-922.) " 'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' [Citations.]" (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881, original italics.) "In a substantial evidence challenge to a judgment, the appellate court will 'consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]' [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations.

30

[Citations.] Moreover, findings of fact are liberally construed to support the judgment. [Citation.]" (*Estate of Young* (2008) 160 Cal.App.4th 62, 76.)

Having reviewed the trial record in its entirety, we determine that substantial evidence supports the jury's verdict that Sentry breached the covenant of good faith and fair dealing by unreasonably or without proper cause failing to pay insurance benefits under the building coverage in Borjon Auto Center's Sentry policy, and the failure was a substantial factor in causing harm to Borjon Auto Center.

The evidence included the opinions of Borjon Auto Center's claims handling expert, Walker, that Sentry violated the three principles that apply to insurance claims with respect to Borjon Auto Center's claim for building coverage by (1) failing to review Borjon's Auto Center dealership agreements in making their determination of whether Borjon Auto Center had an insurable interest in the dealership building; (2) conducting an investigation that was biased and not thorough since the investigation did not diligently search for facts that would support coverage; and (3) rescinding the building coverage due to the terms of Borjon Auto Center's lease after the claim was made, although Sentry did not review the lease before issuing the policy and did not take a recorded statement from Milton, Borjon's insurance agent, who procured the policy.

Additionally, the evidence showed that Sentry's top claims management had decided as early as two days after the fire, as shown in the October 7, 2014 email sent to Trautschild, Sentry vice president of claims, that Borjon Auto Center did not have an insurable interest in the dealership building. Sentry thereafter did not conduct a thorough investigation since it had decided that Borjon did not have an insurable interest in the dealership building based on Borjon Auto Center's lease and the Sentry policy, without reviewing Borjon Auto Center's franchise agreements with General Motors and Chrysler. Sentry also failed to review any written or recorded statements, which was contrary to Sentry's policy manual that required such statements when a coverage dispute is likely. Consequently, there is substantial evidence that Sentry violated the covenant of good

31

faith and fair dealing by conducting an inadequate investigation that resulted in the denial of Borjon Auto Center's right to receive benefits under the building coverage in the Sentry policy. (See *Waller*, *supra*, 11 Cal.4th at p. 36.)

We next consider Sentry's alternative contention that it cannot be held liable for breach of the covenant of good faith and fair dealing under the genuine dispute doctrine.

### 3. Genuine Dispute Doctrine

Under the genuine dispute doctrine, " 'an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith[,] even though it might be liable for breach of contract.' [Citation.] That is because 'whe[n] there is a genuine issue as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of that dispute.' [Citation.]" (*Paslay v. State Farm General Ins. Co.* (2016) 248 Cal.App.4th 639, 652-653.) In other words, "an insurer does not act in bad faith when it mistakenly withholds policy benefits, if the mistake is reasonable or is based on a legitimate dispute as to the insurer's liability. [Citations.]" (*Century*, *supra*, 139 Cal.App.4th at p. 949.)

However, "[t]he genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. A *genuine* dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds. [Citations.]" (*Wilson*, *supra*, 42 Cal.4th at pp. 723-724, fn. omitted.)

We find no merit in Sentry's contention that a genuine dispute existed regarding coverage, for two reasons. First, the coverage issue in this case regarding whether Borjon Auto Center had an insurable interest in the dealership building could have been resolved by applying existing California Supreme Court authority and the relevant provisions of the Insurance Code. As we have discussed, over a century ago the California Supreme

32

Court established a broad insurable interest rule: "It is held sufficient that the insured has a direct pecuniary interest in the preservation of the property, and that he [or she] will suffer a pecuniary loss as an immediate and proximate result of its destruction. [Citations.]" (*Davis*, *supra*, 111 Cal. at p. 414.)

This rule was codified in Insurance Code section 281: "Every interest in property, or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might directly damnify the insured, is an insurable interest." Moreover, our Supreme Court in *Davis*, *supra*, 111 Cal. at page 414 clarified that ownership of property is not required for an insurable interest in the property: "[I]t is not the house but the interest of the owner therein that is insured, and, whether that interest is founded upon legal title, an equitable title, a lien, or such other lawful interest therein as will produce a direct and certain pecuniary loss to the insurer by its destruction, he [or she] has an insurable interest therein."

Second, as we have discussed, the trial evidence showed that Sentry's decision to deny building coverage was made without Sentry complying with its "obligation to thoroughly and fairly investigate, process and evaluate the insured's claim." (See *Wilson*, *supra*, 42 Cal.4th at p. 723.) As early as two days after the fire, Sentry's top claims management decided that Borjon Auto Center did not have an insurable interest in the dealership building. Sentry then failed to conduct a thorough investigation, as shown by top claims management's failure to review either Borjon Auto Center's franchise agreements with General Motors and Chrysler or any written or recorded statements, which was contrary to Sentry's policy manual that required such statements with respect to a potential coverage dispute.

Accordingly, we determine that Sentry has not shown that there was a genuine dispute as to whether Borjon Auto Center had an insurable interest in the dealership building that would bar Sentry's liability for breach of the covenant of good faith and fair dealing in denying coverage.

**D.** *Punitive Damages*

Sentry contends that the award of punitive damages in the amount of $6,240,000 must be reversed because it is not supported by clear and convincing evidence of oppression, fraud, or malice, and the amount of the punitive damages award is excessive.

### 1. Rules Governing an Award of Punitive Damages

Civil Code section 3294, subdivision (a) provides: "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." " ' "Malice" ' includes "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." (Civ. Code, § 3294, subd. (c)(1).)' [Citation.]" (*Pilliod v. Monsanto Co.* (2021) 67 Cal.App.5th 591, 641 (*Pilliod*); see also *City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 392 [punitive damages may not be awarded for breach of contract].)

The California Supreme Court has stated the constitutional limits on an award of punitive damages: "The due process clause of the Fourteenth Amendment to the United States Constitution prohibits states from imposing ' "grossly excessive" ' punitive damages awards on tortfeasors. (*BMW of North America, Inc. v. Gore* (1996) 517 U.S. 559, 568 (*Gore*).) To determine whether a jury's award of punitive damages is grossly excessive, reviewing courts must consider, among other factors, whether the 'measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff' by comparing the amount of compensatory damages to the amount of punitive damages. [Citation.] Absent special justification, ratios of punitive damages to compensatory damages that greatly exceed 9 or 10 to 1 are presumed to be excessive and therefore unconstitutional. [Citation.]" (*Nickerson v. Stonebridge Life Ins.* (2016) 63 Cal.4th 363, 367 (*Nickerson*).)

34

"In a series of cases culminating in *Gore, supra,* 517 U.S. 559, the court developed a set of substantive guideposts that reviewing courts must consider in evaluating the size of punitive damages awards: '(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.' [Citations.] A trial court conducts this inquiry in the first instance; its application of the factors is subject to de novo review on appeal. [Citation.]" (*Nickerson*, *supra*, 63 Cal.4th at pp. 371-372.)

### 2. Substantial Evidence

" ' "Whether to award punitive damages and how much to award were issues for the jury and for the trial court on the new trial motion. All presumptions favor the correctness of the verdict and judgment." [Citation.] We review the evidence supporting awards of punitive damages for substantial evidence. "As in other cases involving the issue of substantial evidence, we are bound to 'consider the evidence in the light *most favorable to the prevailing party*, giving him [or her] the benefit of *every reasonable inference*, and *resolving conflicts* in support of the judgment.' " [Citation.] We are mindful that in light of the heightened burden of proof under Civil Code section 3294, subdivision (a) "we must review the record in support of these findings in light of that burden. In other words, we must inquire whether the record contains 'substantial evidence to support a determination by clear and convincing evidence.' " [Citations.]' " (*Pilliod*, *supra*, 67 Cal.App.5th at pp. 641-642.)

We may also give weight to the trial court's approval of the punitive damages award by denying Sentry's motion for new trial. (See *Stevens v. Owens-Corning Fiberglas Corp.* (1996) 49 Cal.App.4th 1645, 1658.) In this case, the trial court denied Sentry's challenge to the punitive damages award in its motion for new trial in a ruling from the bench: "Borjon had no opportunity before the fire to secure other insurance,

35

due to Sentry's behavior of renewing the contract and leading Borjon to believe that he was fully insured.  Sentry never investigated the lessee's potential for an insurable interest, never investigated the franchise policies and its impact on Borjon's insurable interest in the building.  It did not review the franchise documents and determine whether or not the franchise documents mandated a building in King City that properly housed the franchise; and that was the basis for Borjon seeking to purchase building coverage in the first place.  [¶]  The harm:  Borjon lost the franchise and business due to the lack of a building or insurance proceeds to compensate for the loss of the building.  Sentry violated the community standard of decency, fairness, and reasonableness.  And the jury determined its conduct was unreasonable without proper cause and done with malice, oppression and fraud."

The trial court concluded in its ruling to deny Sentry's motion for new trial that "[b]alancing the reprehensible misdeeds of defendants, the amount of compensatory damages or potential harm to plaintiff's and defendant's financial condition, this Court does not find that the jury award of punitive damages in the amount of $6,240,000 was grossly excessive, and does not exceed the State's power to punish in light of the facts of the case measured against all of the guideposts, as well as the three factors of the reprehensibility of defendant's misdeeds, the amount of compensation and potential harm in relation to the punitive damages award and defendant's financial condition.  [¶]  The net worth of defendant was stipulated to at $229,250,319.  The punitive damages was 2.7 percent of the net worth of defendant.  And balancing the State's interest and its ability to punish conduct, this is not grossly excessive."

### 3. Analysis

Sentry contends that there was not clear and convincing evidence of oppression, fraud, or malice because the evidence showed that Sentry did not actually fail to conduct an adequate investigation or fail to consider Borjon Auto Center's interests.  According to Sentry, its claims managers had no reason to review Borjon Auto Center's franchise

36

agreements because there was no precedent for doing so; Sentry's claims counsel responded to the April 2015 letter from Borjon Auto Center's claims counsel requesting reconsideration of the building coverage denial and by implication the April 2015 letter was reviewed by top claims management; and Borjon Auto Center never claimed lost profits until the time of trial.

Borjon Auto Center argues that the punitive damages award is supported by substantial evidence supporting a finding of oppression, fraud, or malice, beginning with Sentry's egregious conduct in issuing a policy with building coverage without determining whether the policyholder had an insurable interest. Borjon Auto Center also points to Sentry's conduct in immediately focusing on "walking away" from the Borjon Auto Center's building coverage claim, and failing to conduct a full and fair investigation, as well as the failure of top claims management to consider Borjon's coverage counsel's letter requesting reconsideration of the building coverage denial.

We determine that Sentry has not met its burden on appeal to show that the award of punitive damages is not supported by clear and convincing evidence. Sentry's argument is based on viewing the evidence of its conduct in the most favorable light to Sentry, but our standard of review does not permit us to do so. To the contrary, we are required to " ' " 'consider the evidence in the light *most favorable to the prevailing party*, giving him [or her] the benefit of *every reasonable inference*, and *resolving conflicts* in support of the judgment.' " [Citation.]' " (*Pilliod*, *supra*, 67 Cal.App.5th at p. 641.)

Viewing the evidence in Borjon Auto Center's favor, we agree with the trial court that there was clear and convincing evidence that Sentry's conduct with respect to Borjon Auto Center's claim for building coverage was reprehensible and met the standard for an award of punitive damages. In particular, we note the conduct of Sentry's top claims management in denying building coverage soon after the fire destroyed the dealership building without a full and fair investigation, including their failure to review Borjon Auto Center's franchise agreements although Sentry's claims adjuster, Romero, was

aware that the franchise agreement tied Borjon Auto Center to the 905 Broadway location and it was not possible to relocate the dealership. And the harm to Borjon Auto Center was great, since Borjon was compelled to voluntarily terminate his General Motors and Chrysler franchises and permanently close the Borjon Auto Center business due to the lack of a dealership building. Accordingly, the trial evidence was sufficient to support a finding that Sentry's conduct was reprehensible since top claims management acted in conscious disregard of Borjon Auto Center's rights under the building coverage. (See Civ. Code, § 3294, subd. (c)(1); *Pilliod*, *supra*, 67 Cal.App.5th at p. 641.)

We are also not convinced by Sentry's argument that the punitive damages award of $6,240,000 was constitutionally excessive and violates the "due process norm" of "3 or 4 to 1." As the trial court noted, the award of $6,240,000 was 2.7 percent of Sentry's stipulated net worth of $229,250,319. Assuming a ratio of punitive to compensatory damages of 7.2:1, as Sentry argues, the ratio is less than 9:1 or 10:1 and therefore the award is not presumed to be unconstitutional. (See *Nickerson*, *supra*, 63 Cal.4th at p. 367.)

Moreover, our Supreme Court has rejected an " 'outer constitutional limit' of approximately *four* times the compensatory damages." (*Simon v. San Paolo U.S. Holding Co., Inc.* (2005) 35 Cal.4th 1159, 1182-1183 (*Simon*) [holding ratio of punitive damages to compensatory damages of 450 to 1 constitutionally excessive].) Instead, " '[s]ingle digit multipliers are more likely to comport with due process'." (*Id*. at p. 1183.) "The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff." (*State Farm Mut. Auto. Ins. Co. v. Campbell* (2003) 538 U.S. 408, 425 [holding ratio of punitive to compensatory damages of 145 to 1 constitutionally excessive]; see also *Simon*, *supra*, at p. 1188 [punitive damages reduced to constitutional maximum of 10 to 1 ratio of punitive to compensatory damages]; *Nickerson, supra*, 5 Cal.App.5th at p. 370 [trial court's reduction of punitive damages award to 10 to 1 ratio of punitive to compensatory

damages not constitutionally excessive].) In this case, we determine that the facts of Sentry's reprehensible conduct and the circumstances of the great harm to Borjon Auto Center are sufficient to support an award of punitive damages in the amount of $6,240,000 that is not constitutionally excessive.

Finally, Sentry contends that comparison of the $6,240,000 punitive damages award to the maximum civil penalty of $10,000 that may be imposed by the Insurance Commissioner under Insurance Code sections 790.03 and 790.035 for unfair or deceptive practices shows that the punitive damages are constitutionally excessive.[5] Borjon Auto Center responds that the conduct penalized under these provisions of the Insurance Code does not provide a useful comparison in this case. We agree. Sentry's reprehensible conduct in this case, which resulted in the loss of the insured's business due to Sentry's wrongful denial of the insured's claim under the building coverage, is not comparable to the conduct penalized under Insurance Code sections 790.03 and 790.035. (See, e.g, *Century*, *supra*, 139 Cal.App.4th at p. 967; *Mazik v. Geico General Ins. Co.* (2019) 35 Cal.App.5th 455, 474.)

Having considered the evidence in the light most favorable to Borjon Auto Center, we therefore conclude there are no grounds for reversal of the award of punitive damages. (See *Pilliod*, *supra*, 67 Cal.App.5th at pp. 641-642.)

---

[5] Insurance Code section 790.03 provides in part: "The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance. [¶] . . . [¶] (h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices. . . ." Insurance Code section 790.035, subdivision (a) provides in part: "Any person who engages in any unfair method of competition or any unfair or deceptive act or practice defined in Section 790.03 is liable to the state for a civil penalty to be fixed by the commissioner, not to exceed five thousand dollars ($5,000) for each act, or, if the act or practice was willful, a civil penalty not to exceed ten thousand dollars ($10,000) for each act."

**E.** *Attorney Fees on Appeal*

Finally, Borjon Auto Center seeks an award of *Brandt* attorney fees on appeal. This court has determined that *Brandt* attorney's fees are recoverable on appeal. "We agree with the Ninth Circuit in *McGregor* [*v. Paul Revere Life Ins. Co.* (9th Cir. 2004) 369 F.3d 1099] that attorney fees the insured has incurred to defend a judgment against the insurer's appeal are a logical extension of the fees incurred in pursuing the recovery in the trial court. The collection of the benefits due is not complete when the insurer resists the judgment by challenging the judgment on appeal. Thus, to the extent that appellate attorney fees reflect the continuation of services performed to obtain the rejected payment of policy benefits, they should be recoverable under the rationale of *Brandt.*" (*Baron v. Fire Ins. Exchange* (2007) 154 Cal.App.4th 1184, 1198 (*Baron*); but see *Burnaby v. Standard Fire Ins. Co.* (1995) 40 Cal.App.4th 787, 797 [*Brandt* attorney's fees are not recoverable on appeal].)

Since *Brandt* attorney's fees " 'are recoverable as damages, the determination of the recoverable fees must be made by the trier of fact unless the parties stipulate otherwise.' [Citations.]" *(Nickerson*, *supra*, 63 Cal.4th at p. 373.) We will therefore remand the matter for a determination by the trial court, on appropriate motion, of the amount of attorney's fees on appeal to which Borjon Auto Center is entitled to under *Brandt, supra,* 37 Cal.3d at pages 817-819. (See *Baron*, *supra*, 154 Cal.App.4th at pp. 1198-1199.)

## IV. DISPOSITION

In case No. H048021, the judgment is affirmed. In case No. H048084, the judgment is affirmed. Costs on appeal are awarded to Borjon Auto Center. The matter is remanded to the trial court for a determination, on appropriate motion, of the amount of attorney's fees on appeal to which Borjon Auto Center is entitled under *Brandt v. Superior Court* (1985) 37 Cal.3d 813 at pages 817-819.

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

DANNER, J.

_____

WILSON, J.

***Borjon Auto Center King City Inc. v. Sentry Select Insurance Company***
**H048021**
**H048084**